## UNITED STATES CEMENT COMPANY *v.* COOPER.

[No. 21,452. Filed April 28, 1909. Rehearing denied July 2, 1909.]

1. APPEAL.—*Transfers.—Purpose.*—The purpose of §1394 Burns 1908, Acts 1901, p. 565, §10, providing for transfers from the Appellate Court to the Supreme Court is to secure uniformity in the declaration of legal principles. p. 602.

2. APPEAL.—*Transfers.—Rehearing.—"Losing Party."*—Where appellant secures a reversal in the Appellate Court but the law as laid down is incorrect or violates a ruling precedent, such appellant is a "losing party" within the meaning of §1394 Burns 1908, Acts 1901, p. 565, §10, providing that the "losing party" on an appeal to the Appellate Court may, on the overruling of his petition for a rehearing, move to transfer the case to the Supreme Court. p. 603.

United States Cement Co. *v.* Cooper—172 Ind. 599.

3. STATUTES.—*Remedial.—Appeal.—Transfers.*—The statute (§1394 Burns 1908, Acts 1901, p. 565, §10); providing for transfers of cases from the Appellate to the Supreme Court, is remedial, and should receive a liberal construction. p. 603.

4. PLEADING.— *Complaint.— Paragraphs.— Demurrers.—Erroneous Rulings.—When Shown Harmless by Interrogatories.*—Alleged error of the court in overruling a separate demurrer to a complaint in three paragraphs for the reason that the first paragraph was insufficient, is rendered harmless by the answers to the interrogatories showing that the verdict rested on the second and third paragraphs. p. 605.

5. MASTER AND SERVANT.—*Dangerous Machinery.—Guarding.—Factory Act.*—It is the imperative duty of manufacturers to guard their dangerous machinery (§8029 Burns 1908, Acts 1899, p. 231, §9). p. 606.

6. MASTER AND SERVANT.—*Assumption of Risk.—Factory Act.*—A servant injured by the master's failure to guard dangerous machinery, as required by §8029 Burns 1908, Acts 1899, p. 231, §9, does not assume the risk of such violation. p. 606.

7. PLEADING.—*Complaint.—Statutory Action.*—A complaint based upon a statutory right must bring the plaintiff within the terms thereof. p. 606.

8. MASTER AND SERVANT.—*Common Law.—Safe Place.*—At the common law the master was required to furnish his employe a reasonably safe place in which to work, and reasonably safe tools and appliances with which to work. p. 607.

9. CONSTITUTIONAL LAW.—*Masters' Duties.*—In the interest of the safety and health of employes, the legislature has the right to change the common-law standard of duty of masters. p. 607.

10. STATUTES.—*Factory Act.—Purpose.—Master and Servant.*—The factory act (Acts 1899, p. 231) provides for the protection and safety of employes and for a system of inspection for the enforcement thereof. p. 607.

11. STATUTES.— *Construction.— Ejusdem Generis.*— The rule of *ejusdem generis* requires the restriction of general words to the same kind or genus as the preceding particular words, and the sole object of the rule is to assist the court in determining the true meaning of the statute. p. 609.

12. STATUTES.—*Construction.—Aids.*—In construing a statute the courts will look to the entire act, its general purpose, its title and the evil to be remedied. p. 610.

13. STATUTES.— *Construction.— Particular and General Words.— Ejusdem Generis.*—Where the particular words of a statute exhaust the classes to which they belong, the rule of *ejusdem generis* is not applicable, there being no meaning left for the application of such general words. p. 610.

14. STATUTES.—*Construction.*—*Words.*—All the words used in a statute must be given a meaning if possible. p. 611.

15. STATUTES.—*Factory Act.*—*Dangerous Machinery.*—*Guarding.*— Section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908), requiring manufacturers to guard "all vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description," imports that not only the specific appliances enumerated, but also that all other dangerous machinery not specifically designated, shall be guarded, where practicable to do so. p. 611.

16. MASTER AND SERVANT.—*Negligence.*—*Dangerous Machinery.*— *Factory Act.*—*Violation.*—*Factory Inspector's Orders.*—The failure of a manufacturer to guard all appliances specifically mentioned in section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908), as well as other appliances ordered to be guarded by the factory inspector, constitutes negligence as a matter of law. p. 612.

17. MASTER AND SERVANT.—*Dangerous Machinery.*—*Guarding.*— *Jury.*—Whether any appliance or machine used in a factory, other than those specifically enumerated in section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908), or ordered to be guarded by the factory inspector, should be guarded, is a question for the jury. p. 612.

18. PLEADING.—*Complaint.*—*Master and Servant.*—*Factory Act.*— *Dangerous Machinery.*—A complaint by a servant, alleging that defendant manufacturing company failed to cover a conveyor, that it was dangerous by reason of its being uncovered, and that it might have been covered at a reasonable cost, and without affecting its efficiency, and that by reason thereof plaintiff was injured, is sufficient. p. 613.

19. TRIAL.—*Interrogatories.*—*Judgment.*—The general verdict controls unless the answers to the interrogatories to the jury are in irreconcilable conflict therewith. p. 613.

20. MASTER AND SERVANT.—*Contributory Negligence.*—*Due Care.*— *Dangerous Machinery.*—*Notice.*—*Jury.*—Whether a servant, in attempting knowingly to step over an uncovered conveyor, was guilty of contributory negligence, or was in the exercise of ordinary care, are questions for the jury. p. 613.

21. TRIAL.—*Argument to Jury.*—*Misconduct.*—*New Trial.*—In a servant's action for damages for personal injuries, remarks of his attorney as to plaintiff's poverty and defendant's wealth, are objectionable, and may constitute reversible error. p. 614.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by Spencer E. Cooper, by his next friend, against the United States Cement Company. From a judgment on

a verdict for plaintiff for $500, defendant appeals. Transferred from Appellate Court under §1394 Burns 1908, cl. 2, Acts 1901, p. 565, §10. *Reversed.*

*Elmer E. Stevenson, Henry C. Duncan, Ira C. Batman* and *W. H. Martin,* for appellant.

*J. E. Boruff* and *R. R. Boruff,* for appellee.

HADLEY, J.—The United States Cement Company, defendant below, appealed from a judgment against it to the Appellate Court, where the judgment was reversed, and the cause remanded to the circuit court for a new trial. There was no petition for a rehearing filed in the Appellate Court by the appellee, but the cement company, being dissatisfied with the declarations of law contained in the opinion of the Appellate Court, filed its petition for a rehearing and for a modification of the opinion and mandate. Appellant's petition was overruled, and thereupon, in due season, it filed its application, under clause two of §1394 Burns 1908, Acts 1901, p. 565, §10, for a transfer of the case to the Supreme Court, alleging therein that the decision of the Appellate Court is in conflict with certain specified ruling precedents of this court.

Is appellant, within the meaning of the statute, such a "losing party" as entitled it to have the opinion of the Appellate Court reviewed by this court? We think it is.

1. Section 1394, *supra,* does not say "any party" against whom a judgment has been reversed. The language is "any losing party" who has filed, and had overruled, a petition for a rehearing, may apply for a transfer of the case to the Supreme Court, on the ground that the decision complained of contravenes a ruling precedent of the Supreme Court, or that a new question of law has been presented, and decided incorrectly. It will be observed that the question presented here, by an application to transfer, is not whether the decision of the Appellate Court is right or wrong, but is the statement and application of legal princi-

ples therein at variance with the decision of like, or kindred, questions by the Supreme Court. The obvious purpose of the legislature in providing for this class of transfers from the Appellate Court to the Supreme Court was to keep the decisions of the two courts of appeal harmonious and consistent, and thus avoid the confusion that would arise from two incompatible lines of legal interpretation. *Barnett* v. *Bryce Furnace Co.* (1901), 157 Ind. 572; *Klein* v. *Nugent Gravel Co.* (1904), 162 Ind. 509.

It is alleged in the application that the reversal of the judgment by the Appellate Court in favor of appellant was on account of a mere technical error, namely, "misconduct of counsel" for appellee, and that the law of the case, as declared by the court in its ruling upon the demurrers to the complaint, is so erroneously stated, and so firmly established in this particular case, as to make a retrial wholly unavailing to appellant. Assuming these averments to be true, appellant is the real losing party, and, as shown, the only party that felt aggrieved by the decision of the Appellate Court, and the only party that filed a petition for a rehearing of the cause. If it is a fact that the decision of the Appellate Court contravenes ruling precedents of the Supreme Court, a denial of the transfer will unquestionably violate the spirit, if not the letter, of the statute, and leave in full force and effect a decision that is calculated to puzzle and misguide lawyers and trial courts.

The statute is remedial, and a liberal construction should be given to accomplish the purpose of its enactment. The question before us is unlike that presented in *Standard Pottery Co.* v. *Moudy* (1905), 164 Ind. 656. In that case it did not appear that the appellant, in whose favor the judgment was reversed for a new trial, was in any way prejudiced by the decision. He filed a motion to modify the judgment, but filed no petition for a rehearing of the case, which latter step is, under the statute, essential to the right of transfer. We think the application in this

case comes within the statute, and the appellant is entitled to a review of the judgment by this court.

This is an action by appellee to recover damages for personal injuries alleged to have been caused by the negligence of appellant. It is shown by answers to interrogatories that the United States Cement Company maintains a plant for the manufacture of cement, and employs, among other devices, what is called a "screw conveyor." The conveyor, which is propelled by steam-power, is about eighty feet long, composed of a cylindrical iron rod, three inches in diameter, resting at each end in a bearing and encircled by steel flanges, four or five inches wide, in spiral form, and, when being operated, is revolved in an iron-lined box, for most part uncovered at the top. The box is about eighteen inches wide, is horizontal in position, rests on the floor level, and is about eighteen inches high. The sides of the box are about four inches above the top of the revolving screw. The box traverses and rests on ten hopper-shaped bins, and the office of the screw is to convey to, and distribute in, the bins crushed stone. Immediately on the west side of the box is a board walk, three or four feet wide, for the use of employes. The plaintiff, a young man of eighteen, was employed to attend to the conveyor, and superintend the proper distribution of the crushed stone delivered in the bins, and his duties required him occasionally to step across the conveyor box. He had been engaged at the place two days, and, while in the act of crossing the conveyor box at a place where it was not covered, stumbled and threw his foot into the box, and was injured by the revolving screw. The box could have been covered without impairing its usefulness, and, for the use of employes in crossing, in fact, was covered, with the exception of a few feet at the point where the plaintiff attempted to cross at the time of his injury.

The complaint is in three paragraphs. The first, for negligence, is grounded upon the common law, and the second

and third are based on section nine of the factory act
4. of 1899 (Acts 1899, p. 231, §8029 Burns 1908).   The
negligence charged in the first paragraph is:   (1)
Failure to place a top on the conveyor box;   (2) failure to
provide a way by which appellee could fully discharge his
duties about the bins without crossing over the conveyor box;
(3) negligence in placing four electric wires about three feet
above, and immediately over, the conveyor box, so that the
plaintiff was compelled to stoop when passing over the con-
veyor box.

A separate demurrer to each paragraph, for insufficiency
of facts, was overruled.   Trial by jury, and verdict and
judgment for appellee for $500, with answers to interroga-
tories.   Appellant's motions for judgment on such answers,
and for a new trial, were overruled.

It clearly appears from the answers to interrogatories that
the verdict rests upon the second and third paragraphs of
the complaint, which fact relieves us from a consideration
of the first paragraph, since, if it were bad, the overruling
of the demurrer to it did not injure the defendant.

A description of the screw conveyor is set forth in the sec-
ond paragraph, and it is averred that this conveyor revolved
rapidly, by means of machinery, in an iron-lined box (which
is described), and thus forced forward crushed stone which
was delivered in the box by other machinery; that on July
7, 1905, the work of appellee compelled him to pass about
and over said screw conveyor, which was uncovered, open
and exposed, and without guard or protection, contrary to
the laws of Indiana relating to the use of machinery in mills;
that said unguarded and unprotected screw conveyor was
dangerous to employes of the mill, who were required to
work with and about it; that it could have been guarded at
small cost, without interference with the proper use thereof;
that the plaintiff, while in the line of duty, and doing the
work the defendant directed him to do, and while stepping

over the conveyor, lost his balance, and in falling his right foot and leg were caught in said conveyor, and torn, lacerated and crushed, all of which happened because of the failure of the defendant to guard said screw conveyor as provided by law.

The third paragraph is like the second, except that it alleges that while plaintiff was stooping to avoid some electric wires, which were a short distance above the conveyor box, his foot became entangled, and he fell, throwing his foot into the conveyor box, where it was caught by the flanges of the screw and injured.

It is the imperative duty of the master of a manufacturing establishment to guard dangerous machinery therein, as specified in §8029, *supra,* and a failure to do so is

5. negligence *per se*. *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489; *Inland Steel Co.* v. *Yedinak* (1909), *ante*, 423.

The action proceeds upon the theory that the plaintiff was injured because of the failure of the master to perform a statutory duty, and in such cases the doctrine of as-

6. sumed risks does not apply. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290; *Bessler* v. *Laughlin* (1907), 168 Ind. 38.

The principal question is, Does the complaint show that the offending screw conveyor is such a manufacturing device or machine as the master must guard or fence within the purview of the statute relied upon by appellee?

To begin with, it is conceded that, since the plain-

7. tiff relies upon a special remedy, to succeed he must bring his action clearly within the statute providing it.

The common law is satisfied with requiring masters to furnish employes reasonably safe places in which to work, and

reasonably safe implements and appliances to work
8. with; the question of performance to be determined
by the court or jury from the facts in each particular
case.

The legislature, in conserving the interest the general public has in the preservation of the health, life and limbs
of citizens, may go further than the common law, and
9. set up a particular standard of duty which shall be
observed by all manufacturing establishments to promote the safety and health of their employes. It is obvious
that this is what the lawmakers sought to accomplish by the
act in question. It is entitled "An act concerning labor,
and providing means for protecting the liberty, safety and
health of laborers, and for its enforcement by creating a department of inspection," etc. Acts 1899, *supra*. We here
have notice of two things to be legislated upon: The
10. protection of the safety and health of laborers, and
the creation of a department of inspection for its enforcement.

The provisions of said act of 1899 show that the general purpose was to provide a system of inspection, and to
provide for the guarding and fencing of every kind of dangerous manufacturing or mining instrumentality, in such a
way as to reduce the danger to those required to work with
or about them, as far as may reasonably be accomplished
without impairing or affecting the designed use. Section
five (§8025 Burns 1908) provides that the inspector shall
examine all elevators and require the same to be made, and
kept safe. By sections six and thirteen (§§8026, 8033 Burns
1908) he must inspect all buildings used for manufacturing
purposes, and, if found unsafe to life or limb, must require
them to be made safe. He shall also require handrails to be
put on all stairways and the steps and risers thereof made
easy and safe. By section seven (§8027 Burns 1908) he is
required to see that each room of the establishment is connected with the engine room, by speaking tubes, electric

bells, or devices that control the power. By section eight (§8028 Burns 1908) he is required to investigate the causes of all accidents, and take such reasonable steps as will prevent a recurrence of similar accidents.

. Section nine (§8029 Burns 1908) enacts that in all establishments where machinery is used the master shall furnish belt-shifters, or other safe mechanical contrivances for the purpose of throwing off belts and pulleys, and, when possible, loose pulleys shall be used. All persons under sixteen and all females under the age of eighteen years shall be prohibited from cleaning machinery while the same is in motion. It is further provided in this section that the inspector may attach a notice, over his signature, to any machine that he deems dangerous, and the removal of such notice and the further use of the machine is prohibited until after the required safeguards are put on. It is well to note here that by this provision every sort of dangerous machinery is brought under the dominion of the inspector.

Thus it seems that the dangers arising from unsuitable buildings, from doors of egress, from elevators, stairways, youth and inexperience, from machines condemned by the inspectors, were all within the consideration of the lawmakers, as was also the possible safety to be derived from immediately available belt-shifters, loose pulleys, direct and speedy communication with the engine-room, embracing as the act does, in a general way, the entire field of danger surrounding such industrial establishments, and all of which tend to confirm the unmistakable legislative intention to minimize the perils of every character to which laborers are naturally exposed while pursuing their assigned duties in such places.

The discussion, however, centers upon the following clause of §8029, *supra:* "All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description therein shall be properly guarded."

It is forcibly contended by counsel for appellant that the doctrine of *"ejusdem generis"* applies to this clause, and that the general words, "and machinery of every description therein," must be limited to include only such machinery and appliances as come within one or another of the classes previously specified; and that the screw conveyor complained of, not being subject to classification with any of the *"genera"* immediately preceding, it cannot be said to be appellant's duty to cover or guard it. This position is contested by appellee.

In the construction of statutes or written contracts the doctrine of *ejusdem generis* is applicable, not in all, but in a certain class of cases when general words are not accorded their usual and ordinary meaning, but restricted to things of the same kind, or genus, as those designated by the particular words. 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §437; *Foster* v. *Blount* (1851), 18 Ala. 687, 689.

The office of the rule, however, like that of all other canons of construction, is to afford aid to the court in developing the true meaning of the statute, and cannot be employed to restrict the operation of an act within narrower limits than was intended by the lawmakers. *Woodworth* v. *State* (1875), 26 Ohio St. 196; *Willis* v. *Mabon* (1892), 48 Minn. 140, 156, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. 626; 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §437.

It is never used in an arbitrary sense, but operates as a sort of suggestion to the judicial mind that, when specific words of definite and certain meaning in a statute are deemed advisable by the framers, it may be that they intended the general words to extend only to persons or objects of the same kind or class as those embraced within the particular words, or they might not have gone to the pains of any specific enumeration. Whether the doctrine should be

applied in any case depends largely upon the character and contents of the act as a whole, having due regard for that primary rule of construction that the object of a law must be sought from the entire act, including the title, and from a consideration of the evil to be remedied, the state of public sentiment existing at the time of the passage of the law, and the general purpose of the act as derived from a consideration of every section. If the general purpose of the legislation clearly appears from a study of all the parts, that purpose cannot be defeated or limited by the doctrine we are considering. *Webber* v. *City of Chicago* (1894), 148 Ill. 313, 318; *Gillock* v. *People* (1898), 171 Ill. 307; *Winters* v. *City of Duluth* (1901), 82 Minn. 127, 84 N. W. 788; *Lynch* v. *Murphy* (1893), 119 Mo. 163, 24 S. W. 774; *Woodworth* v. *State* (1875), 26 Ohio St. 196; 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §437; *State* v. *Villines* (1904), 107 Mo. App. 593, 598, 81 S. W. 212; *State, ex rel.,* v. *Harter* (1905), 188 Mo. 516, 87 S. W. 941, 944.

Another potential rule of construction has peculiar application to the facts of this case, namely, that when the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class, in such case there can be nothing *ejusdem generis* left for the rule to operate upon, and we must give the general words a meaning different from that indicated by the specific words, or ascribe to them no meaning at all. *National Bank, etc.,* v. *Ripley* (1901), 161 Mo. 126, 132, 61 S. W. 587; *Ruckert* v. *Grand Ave. R. Co.* (1901), 163 Mo. 260, 276, 63 S. W. 814; *Gage* v. *Cameron* (1904), 212 Ill. 146, 161, 72 N. E. 204; *Gillock* v. *People, supra; Ellis* v. *Murray* (1854), 28 Miss. 129, 142; *Fenwick* v. *Schmalz* (1868), L. R. 3 C. P. *313; 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §437; Maxwell, Interp. of Stat. (3d ed.), p. 478; Endlich, Interp. of Stat., §409.

This result must be avoided, if possible, at the behest of another canon of construction, that a statute must be con-

strued so as to give effect to all its words. Directed by these several rules, we shall inquire as to the meaning that should be attributed to the statute.

To repeat the contested phrase: ''All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws and machinery of every description therein shall be properly guarded.'' If all vats, all saws, all planers, etc., shall be properly guarded, that's the end of it. All vats, all planers, etc., mean vats and planers of every description that may be properly classified as such. The term ''all'' qualifies each class or genus of things here specified, and we necessarily must imply that nothing remains of either class *ejusdem generis* for the general words of the phrase to embrace.

But the guarding of all these things falls far short of carrying out the design of the law. To hold that the General Assembly, in devising a general plan for protecting the safety and health of factory laborers, as indicated by the title, has gone to the pains of ordaining an inspection of buildings, of providing safety devices for the use of elevators and of stairways, the manner of swinging doors of egress, for the control of belts and pulleys, for maintaining communication with engine-rooms, and for the guarding of a few minor appliances, and has left the peril arising from the great body of dangerous machinery used in such places wholly unrestricted, is absurd, and it is discourteous to the legislature to impute to it such lawmaking imperfection.

Considering the general purpose of the legislation, as distinctly shown by the various provisions of the act, it becomes plain that the design of the lawmakers was the selection of certain manufacturing instrumentalities, generally known to be dangerous, and susceptible of being guarded without impairing their usefulness, and the imposition upon masters of the general duty of properly guarding all such instrumentalities, on the penalty that failure to do so should be accounted negligence *per se.*

The great mass of machinery usually assembled in important manufacturing establishments—too multiform and diversified for classification or just control by fixed rules of law—should be understood as being within the scope and meaning of the general words, "and machinery of every description therein" shall be guarded. This distinction, however, in the rules applicable to objects within the purview of the general words, is manifest. The failure to guard all machinery is not negligence *per se*. When a machine, or some part of a machine, is not of a dangerous character, or is so located as not to imperil workmen when in the place, or places, to which their duties call them, or where guarding or fencing is impracticable without materially impairing the use, the same need not be guarded. *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290; *Robertson* v. *Ford* (1905), 164 Ind. 538.

The law does not exact of any one a useless expense. It is not, therefore, negligence as a matter of law to omit the guarding of machinery, except planers and saws, and such other items as may be designated by the inspector for guarding, as provided in §8029 Burns 1908, Acts 1899, p. 231, §9. It is the duty of every employer of labor mentioned in §8028 Burns 1908, Acts 1899, p. 231, §8, to guard or to fence all dangerous machines, and all dangerous parts of machines, so as to decrease the danger to those working with or about them, as far as may reasonably be done; but, outside of the exceptions noted, whether it is the duty of the master to guard any machine, or any part of a machine, is a question of fact for the determination of the jury under proper instructions.

What the law seeks is to lessen the danger to laborers in such establishments. It would not interfere with any safe machine. It would interfere with any machine and any part of a machine that is dangerous, and which may be made safe, or more safe, by fencing. *Green* v. *American Car, etc., Co.*

(1904), 163 Ind. 135; *Laporte Carriage Co.* v. *Sullender, supra.*

We said in the case last cited: "What evidently was intended or contemplated by the legislature was that those parts of the machinery which were dangerous to employes whose duties required them to work in the immediate vicinity of such dangerous machinery should be properly guarded, in order to minimize as far as practicable the perils or dangers attending their labor."

The view we have expressed seems to be in accord with the manifest design of the enactment as a whole. It gives laborers, when assembled in manufacturing and other like establishments, protection from all sources of danger, and enables us to give effect to all the words of the statute in accordance with their usual signification.

It is alleged in both the second and third paragraphs of the complaint that the offending machine was dangerous from being uncovered and exposed; that the same might have been covered at reasonable cost and without affecting its efficiency. We think these averments are sufficient to send these questions to the jury.

Appellant's motion for judgment on the answers to interrogatories was correctly overruled. No answer was in irreconcilable conflict with the general verdict, and the answers generally were consistent therewith.

It is contended that the answers to interrogatories show appellee to have been guilty of contributory negligence. It is shown that he knew the location of the conveyor, its manner of operation, and that it was running when he attempted to cross over it. The mere fact that the employe continued his work with and about the machine, which should have been guarded, does not convict him of contributory negligence; and whether, while so engaged, he used ordinary care and prudence, were questions of fact to be determined by evidence. *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368; *M. S. Huey Co.* v. *Johnston* (1905),

164 Ind. 489; *Baltimore, etc., R. Co.* v. *Cavanaugh* (1905), 35 Ind. App. 32.

Appellee's counsel, in his closing argument to the jury, used the following language: "The plaintiff is not rich. He was not born with a silver spoon in his mouth. He cannot sit in a richly adorned chair with silver and gold piled about his plate. He cannot ride in fine chariots. He does not have millions, like the defendant, made from the labor of other men." The appellant, in the presence of the jury, objected to the language at the time, and moved that the court withdraw the same from the jury, which motion was overruled. Appellant thereupon moved that the court withdraw the case from the jury and set aside the submission, which motion was also overruled, and an exception properly reserved. The language complained of was not directed to any issue or legitimate evidence in the case, and was of a prejudicial character. There could have been no justification for its use, and it cannot now be said that it did not affect the result.

Judgment reversed and cause remanded, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent herewith.