## BALZER *v.* WARING ET AL.

[No. 21,874. Filed June 1, 1911. Rehearing denied December 5, 1911.]

1. MASTER AND SERVANT.—*Safe Place.—Common Law Duty.*—At the common law the master was required to exercise ordinary care to provide for his servants a safe place in which to work. p. 588.

2. MASTER AND SERVANT.—*Relations of.—Legislative Control over.* —The State has an interest in the welfare of its citizens, and may impose reasonable restrictions on their employment. p. 589.

3. MASTER AND SERVANT.—*Factory Act.—Violation.—Negligence.— Assumption of Risk.*—The violation of section nine of the factory act (Acts 1899 p. 231, §8029 Burns 1908), requiring employers to guard certain machinery and appliances, constitutes negligence *per se;* and an employe does not assume the risk of the master's violation of such act. pp. 589, 591.

4. STATUTES.—*Strict Construction.—Factory Act.—Master and Servant.*—Section nine of the factory act (Acts 1899 p. 231, §8029 Burns 1908), being penal and in derogation of the common law, should be construed strictly, but not in such a way as to thwart its beneficent purpose. p. 590.

5. MASTER AND SERVANT.—*Factory Act.—Contributory Negligence.* —A servant to be entitled to recover is required to exercise or-

dinary care, though the master has violated section nine of the factory act (Acts 1899 p. 231, §8029 Burns 1908). p. 590.

6. MASTER AND SERVANT.—*Unguarded Shaft.—Contributory Negligence.—Proximate Cause.—Jury.*—Where a servant was operating a sewing machine upon a table under which was an unguarded power shaft, furnishing the power to operate the machines on such table, and her bobbin and shuttle fell upon the floor, her act in stooping and looking under the table to find such articles, causing her hair to be caught by such shaft, does not render her guilty of contributory negligence as a matter of law, but is a question for the jury, especially where a rule required her to pay for such articles unless she recovered them, and in such case the unguarded shaft will be considered the sole proximate cause of the servant's injury unless her own negligence contributed thereto. pp. 591, 595.

7. MASTER AND SERVANT.—*Nonsuit.—Evidence.—How Considered.*—On a motion to direct a verdict for defendant in a personal injury case, only the evidence favorable to the plaintiff will be considered. p. 594.

8. NEGLIGENCE.—*Contributory.—Burden of Proof.*—The burden of proving contributory negligence is on defendant, but it may be shown by plaintiff's evidence. p. 594.

9. MASTER AND SERVANT. — *Contributory Negligence. — Rules.—Factory Act.—Evidence.*—In an action by a servant for injuries sustained by the catching of her hair in an unguarded shaft, evidence that such servant was instructed by her employer that if she lost anything from the machine she was employed to operate she would have to pay therefor, and that on certain occasions she had been so compelled to pay, is admissible on the question of her contributory negligence in trying to obtain an article which had fallen from such machine under such shaft. p. 597.

From Huntington Circuit Court; *Charles E. Sturgis,* Special Judge.

Action by Mayme Balzer against Larry C. Waring and another. From a judgment for defendants, plaintiff appeals. *Reversed.*

*W. E. Branyan* and *W. A. Branyan,* for appellant.
*Elam, Fesler & Elam* and *J. Fred France,* for appellees.

Cox, J.—This is an action for personal injuries caused by the failure of appellees to guard a certain power shaft in their factory, pursuant to the provisions of §9 of the factory act of 1899 (Acts 1899 p. 231, §8029 Burns 1908), by reason

of which failure of duty appellant was permanently injured. After issue formed by general denial, the cause was submitted to a jury for trial. At the close of appellant's testimony, the court, on motion of appellees, peremptorily instructed the jury to return a verdict for appellees, which was done. Appellant relies upon this action of the trial court, and on certain adverse rulings excluding evidence offered by her, as errors compelling a reversal of the cause. The action of the trial court in non-suiting appellant was taken upon the following facts established by the testimony given in her behalf. At the time appellant received her injury, June 25, 1906, appellees were conducting a glove factory in the city of Huntington, and appellant had been for five months in their employ, sewing gloves with a power machine. Said machine at which appellant worked was one of a large number placed about three feet apart on a long, stationary table. These machines alternately fronted either side of the table, and the women operating them sat at their respective machines. The table was four feet wide, and was supported by iron legs about eight feet apart, and save for a narrow board running along on either side, parallel with the table and attached to these legs near the floor, the space under the table was entirely open. Under the center of the table there was placed a power shaft extending the length of it, with pulleys attached about three feet apart, for operating the machines on the table. This shaft was not guarded, but both it and the pulleys could have been guarded without in any way interfering with the efficiency of the machinery. Appellant operated her machine while sitting in a chair at the table facing it. On the day of said injury, and prior thereto, there was posted in the factory—and appellant knew of it—a rule that all parts of machines broken or lost would be charged to the employe losing or breaking a part. While sitting at her machine at work on the day she received her injury, appellant dropped the bobbin and shuttle of her machine. She caught the bobbin, but the shuttle fell to the

floor. She arose from her seat to search for it, and when a thorough search about her chair resulted in a failure to find it, she stooped and looked under the table, to do which she placed one hand and arm and her head and shoulders thereunder. While so looking to see if the shuttle had fallen through a hole in the floor in front of her, and near to the revolving shaft, strands of her hair, which was coiled on her head, were caught by the shaft and wound around it. Appellant knew that the shaft was under the table, and that it was unguarded, but she did not see it while looking for the shuttle. Most of her hair was violently torn from her scalp and she was severely injured. The injury and nervous shock accompanying it greatly, injuriously and permanently affected her health, so that at the time of the trial she had lost much flesh, and had become emaciated and chronically nervous.

At common law there rested on an employer the general duty to exercise reasonable and ordinary care to provide for the employe a safe place in which to work. This rule

1. of the common law was evolved to fit general conditions. When conditions of labor were simpler, when there was little congestion of machinery and labor in mills and factories, when tools, appliances and machinery used in productive industry were less complicated and complex, when the power and speed of machinery were not so great, when labor largely served apprenticeship in small mills and factories, usually under the careful and skilful personal guidance of the master, when life in all of its phases was more deliberate, the rule had its growth and was reasonable in the duty it placed upon the employer, and fairly adequate to protect labor. The principal upon which this legal duty rested was largely ethical, that human duty of man to man. But,

"New occasions teach new duties;
Time makes ancient good uncouth."

Conditions in industry have changed with the speed of

a revolution. Small mills and factories, with primitive, slow power and simple machinery, under the personal direction of the owner, have fled from the small town and village. Great mills and factories, crowded with complex machinery, driven at great speed with powerful engines, have taken their places in the large centers of active life. Through the production by inventive genius of marvelously efficient machinery, relatively less dependence is placed upon the careful, deliberate skill of the workman of the former time. Demand has arisen for multitudes of operatives, in a large measure young, raw, unskilled and without experience with machinery. From these changed conditions accidents to workmen of a shocking character became alarmingly frequent. The employer did not readily meet the need for the protection of his employes from the dangers of their work, and the employes, hurried and absorbed by their duties, fell victims to conditions. The just conservatism of courts made them hesitate to extend the common-law liability of the employer to fit the changed conditions. The rule was applied generally, and whether the failure of the employer to take any particular precaution for the protection of his employe was a violation of his duty was often uncertain. The

2. State has an interest in the welfare of its citizens, and through its lawmaking power it may impose reasonable burdens on the employers of labor in dangerous pursuits and about dangerous machinery, for the purpose of lessening the danger.

The act of 1899, *supra,* is the deliberate act of the State by the lawmaking branch of its government to make just provisions for new occasions and changed conditions. The

3. general common-law duty is by it, in some particulars, changed, extended, added to, enlarged and made absolute and specific. Under this act the duty of the employer to protect his employes from the dangers of power shafting, such as that operating appellees' machines, by reasonably efficient guards, which can be applied without impairing the

effectiveness of the shafting, and which will prevent dangerous contact with the employes while engaged in their duties, becomes an imperative one. Employes do not assume the risk of injury from shafting left unguarded by a violation of the duty of the employer. The failure to comply with the statute, which specifically requires such shafting to be guarded, is negligence *per se*, for which the employer is bound to respond in damages to an employe injured thereby. *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Green* v. *American Car, etc., Co.* (1904), 163 Ind. 135; *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368; *Robertson* v. *Ford* (1905), 164 Ind. 538; *Bessler* v. *Laughlin* (1907), 168 Ind. 38; *United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599; *Espenlaub* v. *Ellis* (1904), 34 Ind. App. 163; *Baltimore, etc., R. Co.* v. *Cavanaugh* (1905), 35 Ind. App. 32; *Robbins* v. *Fort Wayne Iron, etc., Co.* (1908), 41 Ind. App. 557; *Evansville Hoop, etc., Co.* v. *Bailey* (1909), 43 Ind. App. 153; *Crawford & McCrimmon Co.* v. *Gose* (1909), 43 Ind. App. 373; *Hohenstein-Hartmetz, etc., Co.* v. *Matthews* (1910), 46 Ind. App. 616.

Being highly penal and in derogation of the common law, it is perhaps to be strictly construed, but it is not to be wantonly narrowed, limited or emasculated and ren

4.  dered ineffective to work its just and beneficent purpose by a strained construction contrary to the intent of its enactment, as shown by the existing wrongs and conditions intended to be remedied, and the declaration of its title, that it is an act providing means for the protection of the liberty, safety and health of laborers in mills, factories, etc.

While the employe does not assume the risk of injury from machinery left unguarded in violation of the employer's statutory duty, which necessarily inheres in his em

5.  ployment with and about it, he is still bound to use reasonable and ordinary care to guard himself from injury therefrom, and a failure to do so, resulting in his in-

jury will preclude a recovery by him, notwithstanding the employer's neglect of duty. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Monteith* v. *Kokomo, etc., Co., supra; Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368; *United States Cement Co.* v. *Cooper, supra; Espenlaub* v. *Ellis, supra; Buehner Chair Co.* v. *Feulner* (1902), 28 Ind. App. 479; *Baltimore, etc., R. Co.* v. *Cavanaugh, supra; Robbins* v. *Fort Wayne Iron, etc., Co., supra.*

In this case the shafting was not guarded. It could have been guarded without impairing its usefulness. Such shafting, within reach of the clothing and person of the

3. employe, is notoriously dangerous. The failure on the part of appellees to discharge their statutory duty was actionable negligence. Their failure to guard the shaft, as the law enjoins, together with the whirling shaft on the one hand, and the action of appellant in stooping under the table in proximity to it to look for the shuttle of her machine, on the other, alone entered into and were influential in bringing about her injury. Appellees were by positive law guilty of negligence for which they are liable to respond to appellant in damages, unless they are absolved by her own intervening act.

We are informed by counsel for appellees that the trial court, in peremptorily instructing the jury to find for appellees, acted on the assumption that the unguarded shaft was not the proximate cause of the injury to appellant, but that her own conduct constituted in law contributory negligence, and was such proximate cause.

Appellees violated a definite statutory duty in failing to guard the shaft. This of itself was negligence. Appellant, to whom appellees owed the duty to guard the shaft,

6. while in the ordinary course of her duties as appellees' employe was injured by the uncovered, revolving shaft. Actuated not alone by the natural impulse of one working at the machine, as she was, to recover a part necessary to its operation, which had, as such things will, slipped

from her fingers, and probably fallen into her lap, and thence under the table, but also impelled by the rule of the shop, that required payments for parts lost, she looked for it and was hurt. All she did was clearly in the line of her duties. The unguarded shaft was obviously a proximate cause of her injury.

The case of *Bessler* v. *Laughlin, supra,* involved an omission of duty by the employer under the same statute, and this court, by a unanimous concurrence, approved the following language of Gillett, J., who delivered the opinion of the court: "But granting that the omission was negligent, that, without the intervention of any supervening cause, the wrong followed the injury in a natural sequence, and that the negligence and the injury were so correlated that morally the defendant's omission should be regarded as the efficient cause of the wrong complained of, it may, without hesitation, be affirmed that such omission should be regarded as a proximate cause of the injury. *Coy* v. *Indianapolis Gas Co.* [1897], 146 Ind. 655. To borrow from the thought of a leading writer, whose text upon the subject was quoted *in extenso* by this court in the case last cited: 'The law is practical, and courts do not indulge in refinements and subtleties as to causation if they tend to defeat the claims of natural justice. They rather adopt the practical rule that the efficient and predominating cause in producing a given effect or result, though subordinate and dependent causes may have operated, must be looked to in determining the rights and liabilities of the parties.' Here a statute has been enacted, as has been observed in other jurisdictions in interpreting like statutes, in extension of the common-law duty to furnish a safe place. The enactment in question is a legislative recognition of the fact that the existence of such things in a factory as open vats so reduces the margin of safety that accidents will thereby not infrequently happen to employes while in the line of duty, and so the lawmaking power, becoming at once a conscience and a judgment for the

master, has declared his duty in the premises. As to those to whom the duty is owing, the provisions of the statute are not to be emasculated by acquitting the master of responsibility merely because he can point to some nonresponsible or nonnegligent agency in the line of causation, where his own omission was in reality the efficient and morally responsible cause of the injury. It was said by the supreme court of Iowa, in a case which apparently rested on the common law: 'It is argued for defendant that the proximate cause of the accident was either the negligence of Hopkins, the co-employe, in feeding a board into the machine while plaintiff was in such position as to be struck by it when thrown out, or the blow received by plaintiff from such board, and not the uncovered cogwheels. But, excluding the negligence of plaintiff himself, it is immaterial whether there was another concurrent cause for the injury, if the injury would not have happened had the cogwheels not been negligently left unguarded. The very purpose of guarding the cogwheels would have been to avoid injury to an employe, if by some cause, not due to his own fault, he was brought within reach of them.' *Buehner* v. *Creamery, etc., Mfg. Co.* (1904), 124 Iowa 445, 100 N. W. 345, 104 Am. St. 354.''

Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences. *Evansville Hoop, etc., Co.* v. *Bailey, supra,* and authorities cited.

Appellant was merely doing the things required of her, and doing them in the way of ordinary human action. But for the breach of duty by appellees, appellant would not have been hurt. It was the originating cause and the

immediate cause of her injury. It was clearly the sole, efficient and morally responsible cause, unless it must be said as a matter of law that appellant was guilty of contributory negligence, which was a concurrent proximate cause. To hold otherwise would clearly violate the very purpose of the provision of the statute and take from those who work in mills and factories, and with and about dangerous machinery and appliances, the protection that the law sought to give them. In such places and about such machinery, if the statute is not complied with, accidents and injuries must happen from nonresponsible agencies, and from acts of employes, not in themselves negligent, and to absolve the employer from liability in such cases is to nullify, to a degree, the statute itself.

This leaves us merely to consider whether, on the facts disclosed, appellant was guilty of contributory negligence as a concurring cause of her injury—whether her conduct, under all the facts and circumstances shown, supported by all the intendments and inferences to be drawn therefrom favorable to her, was that of an ordinarily careful person?

It of course needs no citation of authorities to sustain the proposition that where a motion for a nonsuit by a peremptory instruction for the defendant is made at the close of the plaintiff's evidence, the evidence favorable to plaintiff is taken as true, and it is supported by all fair and legitimate inferences that may be drawn from the facts established thereby, and that no intendments are to be made in favor of the defendant.

While the burden of establishing contributory negligence was on appellees, that burden was discharged if appellant's evidence, aided by the just inferences therefrom, showed her to be guilty of contributory negligence.

Would reasonable men draw different conclusions from these facts, showing the circumstances and surroundings, and appellant's conduct, as to whether her conduct was negligent and that it contributed to her own injury? If so, .

the trial court invaded her rights when her case was withdrawn from the free consideration of the jury by the peremptory instruction.

Without discussing the facts shown by the evidence, we think the question just put must be answered in the affirmative. Impelled by her general duty to operate her machine, which involved her duty to recover a part necessary to its operation, and still further by the rule requiring her to pay for lost parts, and probably, urged to haste by the fact that she may have been doing piece work at a nominal price, it must be manifest that her conduct was such that the average judgment of twelve men of varying degrees of carefulness should have been taken upon it to determine whether it amounted to culpable carelessness rather than the judgment of one man, perhaps cautious in the extreme.

As applicable to such a case as this, this court, in the case of *Buehner Chair Co.* v. *Feulner, supra,* has quoted with approval, from the case of *Sioux City, etc., R. Co.* v. *Stout* (1873), 17 Wall. 657, 21 L. Ed. 745, the following: ''Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion.

This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring, than can a single judge.''

Also in the same case the following language in *Finegan* v. *London, etc., R. Co.* (1889), 53 J. P. 663, is quoted and approved: ''I think to make questions of law out of what are in their real nature questions of fact for a jury does harm and not good, and it tends to unsettle the law rather than to settle it, and I am confirmed in that view, I think, by that which is certainly an undoubted but deplorable fact, that whenever questions of negligence are argued and put forward as questions of pure law then the difficulty arises, and in most cases they divide judges of great experience and great acuteness more than any other questions which have ever been discussed in courts of justice.''

In *Buehner Chair Co.* v. *Feulner, supra,* in which these quotations are made, the injured employe was working about a power machine with which holes were bored in wood with bits, and his sleeve was caught by the rapidly-revolving and descending bit, and his arm severely injured thereby, and it was contended that his contributory negligence concurred in producing his injury. In the opinion of Gillett, J., it was said: ''For the court to say, as a matter of law, in a case of this kind, that there was contributory negligence, and that therefore there could be no recovery, would be to leave but little room for the operation of a beneficent statute.''

In the case of *United States Cement Co.* v. *Cooper, supra,* an employe in attempting to step over an uncovered screw conveyor, not specifically required to be covered, but dangerous and within the purpose of §8029, *supra,* slipped and stepped into the turning screw, and was injured. It was held that the question of his contributory negligence was properly for the jury. See, also, *Hohenstein-Hartmetz, etc., Co.* v. *Matthews, supra; New Castle Bridge Co.* v. *Doty*

(1907), 168 Ind. 259, 265; *Evansville Hoop, etc., Co.* v. *Bailey, supra.*

We have no authority to abridge the law, and therefore hold that the trial court erred in instructing the jury to find for appellees.

During the trial of the cause appellant offered to prove, in answer to questions submitted to her and another witness in her behalf, that the forewoman in charge of the factory had, before the accident, instructed appellant that if she lost anything connected with her work she must hunt for it, and if not found, that she would be compelled to pay for it, and that when she had broken a shuttle shortly before the accident she had been compelled to pay for it. This testimony was excluded by the court, and appellant urges that this is an error that prejudiced her cause. We think the court erred in excluding this evidence. The jury was entitled to have it, as it bore even more potentially and specifically on appellant's action in searching for the lost shuttle and the scope of her duties than the posted notice.

The judgment is reversed, with instructions to the lower court to grant appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.