## STATE v. McGILLIC.

### (141 N. W. 82.)

The state appeals from an order sustaining a demurrer to a criminal information framed to charge a landlord with knowingly permitting his premises to be used by a tenant for the purpose of violating the prohibition laws, and contrary to the provisions of chapter 193 of the Session Laws of 1907. *Held:*

**Information — charging part — intoxicating liquors — place — description.**
(1) That the charging part of an information alleging that the defendant "did unlawfully and knowingly permit a portion of a building controlled by him [described], and located in said city of Mandan, to be used as a place where intoxicating liquors were sold . . . as a beverage," sufficiently charges the offense defined by one portion of chapter 193 of the Session Laws of 1907.

**Words — interest — lessor — premises.**
(2) That the words "controlled by him" sufficiently characterize the necessary proprietary interest of the lessor in the premises leased.

**Crime — leased premises — owner — agent — interest.**
(3) That the statute defines the commission of the crime by persons other than those having the interest of owner or agent in the premises leased, and that the doctrine of *ejusdem generis* does not apply to limit the persons who

---

Note.—As to knowledge necessary to charge owner with conduct of tenants or others in selling liquor on premises in violation of an injunction, see note in 25 L.R.A. (N.S.) 602.

may violate the statute to those having only the interest of an owner, or agent for an owner, in the leased premises so permitted to be unlawfully used.

**Nuisance — keeper — interest — property.**
(4) Chapter 193 of the Session Laws of 1907 was enacted to supplement § 9373 of the Revised Codes of 1903, and the term "controlled by him," that would be sufficient under that section to charge the interest required of a nuisance keeper, is sufficient to charge the property interest of a lessor to an alleged nuisance keeper.

**Statute — constitutionality — title of act — subject-matter.**
(5) The statute is constitutional, the title sufficiently covering the subject-matter of the enactment.

Opinion filed March 27, 1913.

An appeal from the District Court for Morton County; *Crawford,* Special J.

Reversed and case remanded.

*Andrew Miller,* Attorney General, *Alfred Zugar, F. C. Heffron,* and *C. L. Young,* Assistant Attorneys General, for appellant.

The crime of keeping and maintaining a common nuisance, as defined by the prohibition law of this state, may be committed by one who is in control of the building or place. Such person is in the same class as the "owner" or "agent," and is responsible. Jensen v. State, 60 Wis. 577, 19 N. W. 374; 21 Am. & Eng. Enc. Law, 1011–1014.

It is sufficient in law to constitute the offense, if it is *permitted* that a building be so used. Crofton v. State, 25 Ohio St. 249, 2 Am. Crim. Rep. 378; Mansfield v. State, — Tex. Crim. Rep. —, 24 S. W. 901.

*B. W. Shaw,* for respondent.

The statute is directed against the "owner," "agent," or "other person." Such "other person" must belong to the same class. The doctrine of *ejusdem generis* applies. State v. Prather, 79 Kan. 513, 21 L.R.A.(N.S.) 23, 131 Am. St. Rep. 339, 100 Pac. 57; 36 Cyc. 1119, 1120; State v. Campbell, 76 Iowa, 122, 40 N. W. 100; State v. Stoller, 38 Iowa, 321.

Penal statutes are not to be construed or extended so as to embrace, by implication, cases or acts not clearly within the prohibition of the statute. State v. Prather, 79 Kan. 513, 21 L.R.A.(N.S.) 23, 131 Am.

St. Rep. 339, 100 Pac. 57; United States v. Wiltberger, 5 Wheat. 95, 5 L. ed. 42.

Portions of the act not expressed or covered in its title are void. Const. § 61.

Goss, J. The state appeals from an order of the district court sustaining a demurrer to a criminal information. As our holding sustains the information under attack, it is set out in full, that it may constitute a form adjudicated as sufficient in prosecutions for such violations of chapter 193 of the Laws of 1907, as are sought to be covered thereby. The information reads:

## Information.

H. R. Bitzing, state's attorney in and for said county of Morton and state of North Dakota, in the name and by the authority of the state of North Dakota, informs this court that heretofore, to wit, on the 3d day of May, 1910, and on divers other days and times between said date and the 1st day of December, 1910, at the city of Mandan, in the county of Morton, and state of North Dakota, one Patrick McGillic, late of the county of Morton and state aforesaid, did commit the crime of knowingly permitting a building to be used for the purpose of unlawful dealing in intoxicating liquors, in violation of chapter 193 of the Laws of North Dakota for 1907, committed in the manner following, to wit:

That at said time and place the said Patrick McGillic, being then and there the duly elected, qualified, and acting police commissioner of the city of Mandan, did unlawfully and knowingly permit a portion of building controlled by him, namely, a suite of rooms upstairs in the building known as "the Pioneer Block," and also known as "the McGillic and Olson Building," located in said city of Mandan, to be used as a place where intoxicating liquors were sold, bartered, exchanged, and given away as a beverage, and as a place where persons were permitted to resort and did resort for the purpose of drinking intoxicating liquors as a beverage, and as a place where intoxicating liquors were kept for sale, barter, exchange, and delivery as a beverage, in violation of chapter 193 of the Laws of North Dakota for 1907, and contrary to the stat-

utes in such case made and provided, and against the peace and dignity of the state of North Dakota.

To this information a general demurrer is interposed "on the ground that the information does not state facts sufficient to constitute a public offense." Under this, respondent urges that the information is deficient in that it nowhere contains the words "owner" or "agent" of the statute defining the offense, nor does it charge that an owner or agent let any building for such purposes, or knowingly permitted such use; and that by alleging simply that the defendant "did unlawfully and knowingly permit a portion of a building controlled by him," and described, to be used for such purposes, it is insufficient to charge a crime under said chapter 193 of the Laws of 1907. He contends "that the controller of a building does not necessarily belong to the same class as the owner, agent, or other person who directly or indirectly lets any building, knowing that it is to be used for such unlawful purpose. A person may be in control of a building, who has by force, intimidation, fraud, or stealth entered upon the prior actual possession of another and detains the same; or when, after entering peaceably upon the real property, turns out by force, threats, or menacing conduct the party in possession; or when he, by force or by menaces and threats of violence, unlawfully holds and keeps possession of any real property, whether the same was acquired peaceably or not; or when a lessee, in person or by subtenant, holds after the termination of his lease or expiration of his term; or when a party continues in possession after sale of the real property under mortgage, execution, order, or any judicial process, after expiration of the time fixed by law for redemption and after execution and delivery of a deed; or when a party continues wrongfully in possession after judgment in partition, or after a sale under an order or decree of the county court. In each of these cases the person would be in control of the premises, but it could not be said that he was in control as the owner or agent who would have the right to let the premises or permit their use for any purpose. The 'other person' referred to in the statute is one who has, like the 'owner or agent of the owner,' the lawful right to let the premises." It is contended by respondent that the offense under this statute can only be committed by "the owner, agent, or other person belonging to the same class, who leased or let

the building for the unlawful purpose, and cannot be committed by any such person who merely knowingly permitted the building to be used for such unlawful purpose; that the 'other person' in this statute is someone who has the same right to let the building for the unlawful purpose as the owner or the agent of the owner; that the doctrine of *ejusdem generis* applies."

We recite at length the foregoing argument of respondent. He has been diligent in bringing to the attention of the court many instances mentioned to emphasize his contention that the statute strikes at only an owner, or an agent of an owner, or a person in the same class possessing, as does such agent or owner, the presumed right or actual right to sublet.

In the construction of statutes the court must keep in the forefront the legislative purpose,—the reason which prompted the enactment. With a knowledge of this, and knowing what was intended to be covered, the statute should then be scrutinized in the light of such purpose, to determine whether it is broad enough, under a reasonable construction of it, to place the ban upon the acts intended by the legislature to be condemned. Accordingly, we should now determine the reason for the act, and what it was sought to remedy thereby, and whether under a reasonable construction the legislation embraces the matters intended to be covered.

We find that chapter 193 of the Laws of 1907 was obviously enacted to supplement § 9373 of the Revised Codes of 1905, and other portions of our so-called prohibition law. It particularly supplements the common-nuisance feature of the old law. That law is aimed primarily at a place wherein is permitted the commission of acts violative of the prohibition law, the statute condemning the place of the violations by declaring it to be a common nuisance. The person in control or charge, whether temporarily or continuously, is the keeper of such nuisance and the person punishable for its maintenance. And in prosecutions under the prohibition laws it is a well-known fact, of which the court may take judicial notice as a matter of common knowledge, "known to all men of ordinary understanding and intelligence." (§ 7139, subdiv. 68, Rev. Codes 1905), that under the law prior to chapter 193 the owner might lease to a tenant or permit an occupant to use, control, and occupy a place wherein a nuisance might be maintained by such lessee, oc-

cupant, or person in control, without the owner being criminally liable, unless the state could prove such facts as would render the owner liable as a joint principal in the unlawful business. And proof of mere letting, leasing or permitting of a tenant or occupant to occupy premises, with proof that the place is conducted as a common nuisance by the tenant, was insufficient alone to fasten criminal responsibility upon the landlord, even though he had actual knowledge of the use to which the leased premises were put, so long as the landlord did no overt act toward the conduct of the tenant's unlawful business. The mere leasing a building, knowing that it may be so used, did not render the owner criminally liable. To bring criminal responsibility home to an owner, agent, or any other person having the right to sublet, and who, with knowledge that the place to be leased or occupied was to be used as a common nuisance, leases to a tenant premises to be so used, or otherwise permits its use for such unlawful purpose, was the object sought by and the purpose for the enactment of this statute. Clearly the legislature had in mind the wrong in the owner escaping criminal liability in leasing his property for such nefarious purposes, and by this legislation has manifested an intent to bring "every owner, agent, or other person" so letting or permitting such unlawful use of premises under criminal condemnation. Cognizant of the defect in the existing law,—knowing well the legislative purpose so plainly evident,—it is the duty of this court to so interpret the statute as to give full effect to that legislative purpose, if such result is possible, by following the usual rules of interpretation of penal statutes.

This brings us to an analysis of the statute itself; and the first thing that is noticeable is that it, like the common nuisance statute, § 9373, concerns primarily a place,—any building used as a common nuisance or wherein the prohibition law is violated. The statute covers: (1) An owner or agent as a lessor, and (2) any licensor, permitter, or person other than a lessor who shall knowingly permit any building to be so used. Stripped of qualifying clauses, the statute reads: (1) "Every owner, agent, or other person who lets any building, knowing it is to be used (as a common nuisance), or (2) (every owner, agent, or other person) who otherwise (than by letting) permits any building to be so used" (as a common nuisance), is guilty of a misdemeanor. The statute is so definite as to an owner or agent of an owner, who knowingly

permits any building to be so used, as to be beyond the necessity for interpretation. The words "owner," "agent" (of an owner), "let," and "permit," each and all, are terms from which may be presumed rights of ownership, inclusive of right to lease and right to permit; and an information charging a defendant, either as owner or agent, with letting or permitting such unlawful use of a building, clearly charges the crime at which the statute is aimed, and must be obviously within the statute.

But this information demurred to is designed to charge the "other person" of the statutory designation of "owner, agent, or other person," with "otherwise" (than by letting) knowingly permitting a building to be so used as a common nuisance; and in order to characterize the "other person," and bring him within the class aimed at by the statute as having the right to lease or grant the right of use as is presumed from the terms "owner or agent," the information has charged defendant with knowingly permitting such unlawful use of a building "controlled by him." Whether the word "control" sufficiently characterizes the legal interest that such "other person" than owner or agent shall have in the property to constitute a charge of the violation of the law through letting or otherwise permitting any building to be so used is the question. It is true that a person, to be guilty of letting or permitting, within the meaning of the statute, must have some interest or right different from that of all the world, otherwise he does not "let" or "permit" such use. The word "owner" implies the right to let or permit; likewise does the term "agent of the owner" imply the right to lease or permit such use. And the legislature, by using the general term, "or other person," in connection with the words "owner" or "agent," and with the verbs "let" and "permit," must have meant any person other than an owner or an agent who shall possess the power to lease or permit such unlawful use. We cannot agree with respondent's contention that the words, "or other person," were not intended to enlarge the scope of the statute as to the property interest of the lessor or permitter in the property let or permitted to be so used. The doctrine of *ejusdem generis*, here invoked by him, amounts, as is said in Lewis's Sutherland, Statutory Construction, § 437, to but "a mere suggestion to the judicial mind that, where it clearly appears that the law-maker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any

25 N. D.—3.

other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. . . . The doctrine of *ejusdem generis* yields to the rule that an act should be so construed as to carry out the object sought to be accomplished by it, so far as that object can be collected from the language employed." We believe the legislative intent was not to limit the operation of this statute to but owners or agents of owners, but, on the contrary, it was intended to cover licensors and all persons exercising dominion under apparent and asserted legal right, and who are guilty of the commission of the specific prohibited acts of such leasing or letting. Such must follow from the interpretation of the ordinary language of the statute in the light of the reasons moving its enactment and the purpose sought by it; and this alone, under all the authorities, sweeps aside the doctrine of *ejusdem generis,* and renders it without value in considering this statute. 36 Cyc. 1121; Pein v. Miznerr, 41 Ind. App. 255, 83 N. E. 784–786; United States Cement Co. v. Cooper, 172 Ind. 599, 88 N. E. 69; Mertens v. Southern Coal Min. Co. 235 Ill. 540, 85 N. E. 743; Martin v. State, 156 Ala. 89, 47 So. 104; Nephi Plaster & Mfg. Co. v. Juab County, 33 Utah, 114, 14 L.R.A.(N.S.) 1043, 93 Pac. 53; Winters v. Duluth, 82 Minn. 127, 84 N. W. 788, all abundantly support this conclusion.

And we see no good reason why this statute should not receive interpretation similar to that given for years by courts in characterizing the authority of the terms "owner" or "keeper" of the common nuisance under § 9373. This act is intended to supplement and render more effective the provisions of § 9373, by subjecting to punishment "owners, agents, or other persons" just without its reach, not actually keeping and maintaining the nuisance, but nevertheless really responsible for the possession of the keeper thereof. A person is sufficiently proven to be such a nuisance keeper when once control, even though temporary, of the place and unlawful business, is shown. And likewise, the lessor or permitter to such keeper should be sufficiently and prima facie proven a law violater when it is established that such owner, agent, or other person in control, real or apparent, has leased the place to the keeper of such unlawful business, with knowledge of such use, or knowing that it

was intended to be so used. If the person in mere control of the business is a keeper, the superior in control who has leased to the keeper, that he might control for unlawful use, should be within this statute, and is evidently, from its terms, within it, inasmuch as the statute does not specifically require a definite property interest in the premises leased. It is as general as to that as it is to the leasing or permitting of the unlawful use, and hence was intended to be as broadly construed in this as in such particulars. By its terms it covers all who "directly or indirectly let any building," and is designed to defeat any indirect letting or attempted round-about evasion as to leasing. Certainly this portion must be liberally construed. Likewise the term, "or who otherwise permits any building to be so used," must be broadly construed, as is evident from the term "otherwise" and the general inclusive word "permit," evidently designed to cover any occupancy by permission other than held by actual lease. Certainly these are strongly indicative that the terms "every owner, agent, or other person who" commits these acts, should also be given a construction that at least will give effect to every such word of this statute including "or other person." Of course, respondent cites the common-law rule for construction of penal statutes, that they should be strictly construed, and not be extended by implication to embrace cases or acts not clearly within the prohibition of the statute, which rule is, however, as to the construction of a statute, to be considered with § 8538, Rev. Codes 1905, expressly providing that "the rule of the common law, that penal statutes are to be strictly construed, has no application to this [Penal] Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

Our conclusion is that the information charging that the defendant did unlawfully and knowingly permit a portion of a building controlled by him to be so used sufficiently charges the crime of knowingly permitting a building to be used for the purpose of unlawfully dealing in intoxicating liquors, under chapter 193 of the Laws of 1907; and that the words, "controlled by him," sufficiently characterize and charge the proprietary interest of the defendant in the building or portion thereof permitted by him to be so used; and that a person in control of a building who permits such use thereof is included within the statute as one of those coming within its ban and as within the general des-

ignation of "every owner, agent, or other person" who commits such acts is guilty of the offense charged. It follows, therefore, that on proof of actual control as would be presumed from leasing, acceptance of rent of the keeper, acts of dominion tending to show ownership and prima facie control for rental purposes, the state would establish its prima facie case under a charge as here made of permitting such unlawful use. Whether anything short of proof of ownership or proof of agency for an established owner would suffice under a charge of leasing or permitting unlawful use by an owner or agent of an owner, we do not decide.

Of course the parenthetical allegation in the information, "being then and there the duly elected, qualified, and acting, police commissioner of the city of Mandan," was not inserted in said information to charge that defendant, in such official capacity, asserted control over said premises, or to make him criminally liable because of his being such an officer, or because of any nonfeasance or act of omission of his as a public official. But it is charged because of the statutory provision for summary removal by the court from public office of any official convicted of such offense. The allegation to that effect in said information presents no issue on the question of guilt or innocence, but concerns something of which the court may take judicial notice and instruct the jury as a matter of law as to whether such official is a public officer.

Respondent also urges that the second portion of the statute, being that part thereof under which this information is framed, and concerning the otherwise permitting of a building to be used as a common nuisance, is unconstitutional as a violation of § 61 of our state Constitution. Respondent contends that such portion of the act is broader than the title. He says that as the title concerns only the letting of a building or portion thereof knowingly for such unlawful purpose, it does not cover the portion of the statute aimed at, permitting such use other than by leasing. It is true that the first portion of the statute uses the term "letting" and has particular reference to the leasing of a building for such purpose, while the latter part of the statute also covers the permitting of such use otherwise than by leasing. But the whole matter is germane to the letting of a building for such unlawful purposes. The statute covers merely the different circumstances or methods whereby

permission, by lease or otherwise, may be given by an owner or a person in control to another to occupy a building or portion thereof as a place within which to violate the prohibition laws. Unless a title must amount to an index of the statute, this must be held sufficient. "If the legislature is fairly appraised of the general character of an enactment by the subject as expressed in its title, and all its provisions have a just and proper reference thereto, and are such as, by the nature of the subject so indicated, are manifestly appropriate in that connection, and as might reasonably be looked for in a measure of such character, then the requirement of the constitution is complied with. It matters not that the act embraces technically more than one subject, one of which only is expressed in the title, . . . so that they are not foreign and extraneous to each other, but 'blend' together in the common purpose evidently sought to be accomplished by the law." These are the words of State v. Cassidy, 22 Minn. 324, 21 Am. Rep. 765; and Winters v. Duluth, 82 Minn. 127, 84 N. W. 789, which last-named case is also on all fours with all of respondent's contentions. See also cases cited in McKone v. Fargo, 24 N. D. 53, 138 N. W. 967, on pages 971, 972; and Lewis's Sutherland, Stat. Constr. § 131. Clearly this statute refers to the single subject of making criminal the permitting of a building to be used for criminal purposes; and the title covering this purpose the act may contain "any provisions germane to the subject expressed, or which are reasonably related or incidental thereto, or which may aid or facilitate the accomplishment of the purpose expressed in the title." Lewis's Sutherland, Stat. Constr. § 145. Respondent cites no authorities, and we are satisfied none can be found supporting his contention, as the statute is not open to this attack.

Accordingly it is the order of this court that the order of the trial court sustaining the demurrer to the information be set aside, and that the judgment of dismissal, entered upon said order sustaining the demurrer, be also vacated and annulled, and that the district court enter an order overruling the demurrer to the information in lieu of the order made sustaining said demurrer, and that said action stand for trial, and further proceedings in no wise prejudiced by the order and judgment appealed from hereby directed to be vacated.