## NATIONAL BANK OF COMMERCE, Appellant, v. RIPLEY.

### Division One, March 12, 1901.

1. **Assignment:** NOTICE: DELAY ON PRESENTING DEMAND: "GOOD CAUSE." The plaintiff bank did not present its claim of $4,800 to the assignee of a bankrupt firm because it had $5,000 of the firm's money on deposit, which it claimed it could set off against the firm's notes; but on a suit by the assignee for the money, the courts held it could not do this. Thereupon, it presented its demand to the assignee long after the date set by him for allowing claims, of which it had notice, and he refused to allow it on the ground that these facts did not constitute a "good cause" under the statute for not presenting the demand on the date set by the assignee for allowing claims. *Held,* that they did constitute a "good cause."

2. ————: STATUTORY CONSTRUCTION: GENERAL AND PARTICULAR WORDS. The statute provides that all creditors who after notice fail to present their claims to the assignee on or before the date set by him for allowing claims against the bankrupt estate, shall be barred, unless they fail to do so "on account of sickness, absence from the State, or any other good cause." *Held,* that the particular words, "sickness or absence from the State," did not limit the meaning of the general words, "or any other good cause," to mean the same *kind* of causes as those mentioned by the particular words, but the general words mean what they say, that is, that demands must be allowed on a day subsequent to that fixed for hearing, on good cause shown.

National Bank of Commerce v. Ripley.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED AND REMANDED *(with directions).*

*Albert Arnstein* for appellant.

(1) Assignment statutes are designed to provide a method whereby a debtor may, under the supervision of a court, apply his assets to the payment of his debts, and to effect a pro rata distribution of such assets among all of his creditors. They are remedial and should be liberally construed to accomplish the salutary purposes of their enactment, namely, a distribution of the assets equally among all the creditors. R. S. 1899, sec. 323; Powers v. Hill, 27 Mo. App. 192; Jaffrey v. Mathews, 120, Mo. 317; Turnipseed v. Shaeffer, 76 Ga. 130; Crittendon v. Coleman, 70 Ga. 296; Preston v. Spaulding, 120 Ill. 208; Ellwood v. Marsh, 31 Neb. 134; People v. Lacombe, 99 N. Y. 49; White v. Cotzhausèn, 129 U. S. 329; South Branch Lumber Co. v. Ott, 142 U. S. 622; Carpenter v. Dick, 41 Ohio St. 295; Kent's Commentaries, p. 465. (2) The amendment of 1879 to the assignment laws of Missouri, allowing a creditor to file and prove his claim after the term designated by the assignee, when he has failed to do so within that time, "on account of sickness, absence from the State, or any other good cause," having been enacted to remedy a defect previously existing in the assignment laws of this State, should be liberally construed "for the suppression of the mischief and the advancement of the remedy." 1 Cooley's Blackstone's Com., p. 86; Sedgwick on Stat. and Const. Law (2 Ed), 308; 23 Am. and Eng. Ency. Law, p. 414; State v. Fenn, 8 Mo. App. 341; Dandy v. Wamble, 110 Mo. 280; Tosbard v. Roger, 114 Mo. 122; Ellwood v. Marsh, 31 Neb. 134; Suppiger v. Gruaz, 36 Ill. App. 60, and 137 Ill.

216; Bank v. O'Donnell, 165 Ill. 39; Owen v. Ramsdell, 33 Ohio St. 443; Scott v. Thomas, 94 Iowa, 442; January v. Powell, 29 Mo. 241; Maverick v. Heard, 99 Mo. 581; Bank v. Scudder, 15 Mo. App. 463; In re Uhrig Brewing Co., 11 Mo. App. 387. (3) The reason for the limitation of the time within which claims may be presented for allowance before an assignee for the benefit of creditors, is the same as that for the limitation of the time allowed for presentation of claims before an executor or administrator, and the same liberal construction should control the interpretation of the former as of the latter. Suppiger v. Gruaz, 36 Ill. App. 60; Dugger v. Oglesby, 99 Ill. 45; Morgan v. Gibson, 42 Mo. App. 234; Tenny v. Lasby, 80 Mo. 664; Wilcox v. Jackson, 10 N. W. 665; Petters v. Farrell (Iowa), 13 N. W. 319; Mallison v. Mills (Minn.), 25 N. W. 631. (4) The doctrine of election between inconsistent rights or remedies has no application to the facts in this case, nor should appellant be punished because of its unsuccessful attempt to set off its claim against the deposit which Ripley & Bronson had with it at the date of the assignment. In re Van Norman, 41 Minn. 494.

*Clinton Rowell* and *Joseph H. Zumbalen* for respondent.

• (1) A creditor who, having been duly notified as required by law, fails to present his claims to the assignee for allowance within the term designated by the assignee, is precluded from any benefit of said estate, unless he can bring himself within the exceptions contained in the statute. R. S. 1899, sec. 342; Nicholls v. Cass, 65 N. H. 212; Smith v. Wheeler, 58 Iowa 659; Carter v. Lee, 83 Iowa 26; Ellison v. Lindley, 33 N. J. Eq. 258; Bank v. Morehead, 38 N. J. Eq. 493; Barton v. Sticher (Kansas), 48 Pac. 920. (2) "Good cause" for failure to present a claim for allowance at the proper time, under sec-

tion 342, R. S. 1899, means a cause *ejusdem generis* with sickness or absence from the State.    St. Louis v. Laughlin, 49 Mo. 559; State v. Pemberton, 30 Mo. 376; State v. Bryant, 90 Mo. 534; Edson v. Hayden, 20 Wis. 498; State v. McGarry, 21 Wis. 498; Hatch v. Stamper, 42 Conn. 28; State ex rel. v. May, 106 Mo. 488; State v. Dinnisse, 109 Mo. 38; State v. Schuchmann, 133 Mo. 111; Reg. v. Whitnash, 7 Barn. & C. 596; State v. Lane, 110 Mo. 254.    (3)    The cause alleged for appellant's failure to present its claim at the proper time is not such as will relieve it from the bar of the statute.    Valentine v. Decker, 43 Mo. 583; Kean v. Lowe, 147 Ill. 564; Claflin Co. v. Kelly, 169 Ill. 20; Lovenberg v. Nat. Bank, 67 Tex. 440; Clendenning v. Perrine, 32 Neb. 155; Bank v. Lipp, 46 Neb. 595; Barton v. Sticher (Kansas), 48 Pac. 920; Dry Goods Co. v. Warden, 151 Mo. 578; Life Ins. Co. v. Elliot, 24 Minn. 134; St. Croix Boom Corp. v. Brown, 47 Minn. 281.

VALLIANT, J.—Appeal from the judgment of the circuit court of the city of St. Louis affirming a decision of the assignee refusing to allow a claim of the plaintiff against the assigned estate.

The facts are:

Ripley & Bronson made a general assignment to W. B. Homer, for the benefit of their creditors, July 24, 1893. Mr. Homer gave notice as the statute requires to creditors to present their claims against the estate on September 12, 13 and 14, 1893, of which fact the plaintiff had knowledge. At the date of the assignment Ripley & Bronson had on deposit in plaintiff bank about $5,000, and the bank held their notes, not then due, aggregating $4,800. The assignee demanded the $5,000, but the bank declined to pay it on the ground that it

was entitled to set off its notes against the deposit.    The assignee sued the bank and the case reached this court, where it was decided that the bank could not set off the unmatured notes of the assignors against the deposit, which at the date of the assignment, was a matured obligation of the bank to the assignors.    [Homer v. Bank of Commerce, 140 Mo. 225.] Thereupon, the bank paid the deposit and interest to the assignee, and then presented the notes it held to the assignee for allowance against the estate.    This was long after the time appointed by the assignee for presenting claims had elapsed, but the estate had not been wound up, and the assignee had in his hands assets belonging to it applicable to the payment of its debts.    In the petition of the plaintiff the facts as above given are stated and that the reason   it had not presented the claims for allowance within the time appointed by the assignee, was that it believed it was entitled to the set off; that the assignee knew all the time of the existence of the notes; that they were given by the assignors for cash loaned them by the bank and constituted an honest debt.    The assignee refused to allow the claim, on the ground only that it was not presented for allowance within the time appointed; the plaintiff appealed to the circuit court, which rendered judgment affirming the decision of the assignee, and the plaintiff took this appeal.

The only question presented for our consideration is, was the plaintiff entitled to have its claim audited and allowed, notwithstanding its failure to present the same for allowance within the period appointed by the assignee? The answer to this question must be found in the interpretation to be given to section 342, Revised Statutes, 1899, which directs that the assignee give notice in the manner therein indicated of a time and place when and where claims are to be presented for allowance, and that he attend then and there to audit the same, and that all creditors who after notice fail to present their claims within

that time be precluded from any benefit of the estate. The section concludes with this proviso: "that any creditor who shall fail to lay his claim before said assignee during said term, on account of sickness, absence from the State, or any other good cause, may, at any time before the declaration of a final dividend, file and prove up his claim, and same may be allowed, and the remaining dividends paid thereon as in case of other allowed claims."

It is contended on the part of the respondent that the proviso means that the estate will open to let in a creditor whose failure to present his claim within the prescribed time was occasioned by sickness, or absence from the State, or something of that kind, but not otherwise.

It is a rule of construction that a statute should be construed so as to give effect to all its words, if it can be done. Out of that rule grew the further rule on which respondent relies, that is, that when particular words of description are used, followed by general words, the latter are to be limited in their meaning so as to embrace only a class of things indicated by the particular words.    The learned counsel for respondent, after stating the rule in their brief and citing authorities in support of it, say:    "The reason of the rule of construction announced in the foregoing cases is that if the general words were meant to embrace persons or things different in character and kind from those specifically enumerated, there would be no occasion at all for a specific enumeration."    The rule, therefore, accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.    This subject has several times received the attention of this court.    [State v. Pemberton, 30 Mo. 376; St. Louis v. Laughlin, 49 Mo. 559;

State v. Bryant, 90 Mo. 534; State ex rel v. May, 106 Mo. 488; State v. Dinnisse, 109 Mo. 434; State v. Lane, 110 Mo. 254; State v. Schuchmann, 133 Mo. 111.] But this is only a rule of construction to aid us in arriving at the real legislative intent. It is not a cast-iron rule, it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instrument. It is a corollary to the first proposition above stated, that the statute must be construed to give effect to all its words. The rule itself must not be so construed as to defeat that purpose. Whilst it is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the *genus* there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose. [Fenewick v. Schmalz, L. R. 3 C. P. 313; Ellis v. Murray, 28 Miss. 129, l. c. 142.] If we were required to give a common name to a class of excuses that would cover sickness and absence from the State, that is a name under which both could be classified to the exclusion of all other good excuses, we might find it difficult to do so to our own satisfaction. And if we undertake to treat them as two classes, then, when we have said that sickness shall be an excuse and absence from the State should also be an excuse, have we not exhausted the entire subject of excuses that can be grouped either under the head of sickness or that of absence from the State?

In the Laughlin case referred to by respondent, this court

quoted from the opinion of Lord TENTERDEN, in Sandiman v. Beach, 17 Barnwall & Cress. 96, in which it was held that the act of Parliament declaring that "no tradesman, artificer, workman, laborer, or other person" should perform worldly labor on the Lord's day, did not include drivers of stage coaches. And in the Laughlin case itself it was held that the power of the city to license and tax "auctioneers, grocers, merchants," etc., etc., enumerating a large number of trade avocations, and concluding with "and all other businesses, trades, avocations or professions whatsoever," did not extend to lawyers. Those two cases sufficiently illustrate the rule, and it was justly and wisely applied in both of them. But can we apply it to this case? In the first place in order to do so we must say that the Legislature did not intend that every creditor who had good cause for not presenting his claim within the time could do so afterwards, but only some of them might have that privilege; though one creditor's excuse might be in fact every bit as cogent as another's, yet if it was not of the same kind as the favored class, he could not be heard. That would create an invidious distinction. To apply the *ejusdem generis* rule to this statute and write it out as so construed, it would read that the belated creditor might be heard if his delay was "on account of sickness or something in the nature of sickness, or absence from the State or something in the nature of absence from the State." It is safe to say the statute would never have gotten on our books in that form.

But, it may be asked, why should the particular words have been used in this instance, if the Legislature intended to allow all creditors, who could show good cause, to come in after the assignee had closed the doors? Doubtless because the Legislature did not want to leave it a debatable question that sickness and absence from the State were good excuses.

This case has no correspondence with Valentine v. Decker, 43 Mo. 583; or Dry Goods Co. v. Warden, 151 Mo. 578, to

which we are referred.    In the one of those cases it was held that a creditor could not claim a distributive share in an assigned estate, and at the same time attack the assignment as fraudulent; in the other, that the plaintiff could not recover his goods by replevin, and at the same time prove up a claim for the price of the goods against the assigned estate.

In the case at bar, the validity of the plaintiffs' claim is conceded.    It was not presented because the bank was advised and believed that it had a right to apply the money in its hands to the payment of the notes.    If that view of the law had proven correct, the plaintiff had no claim to be allowed; it was extinguished by payment.    There was nothing wrong in the plaintiff appealing to the courts to determine its rights in the matter; that is what courts are established for.    The point in dispute at the time had never been decided in this State, and as we said in that case:    "Upon this question, however, the authorities generally are in much conflict."

The spirit of our statute is that the assets of the insolvent debtor be distributed pro rata among all his bona fide creditors. Reasonable regulations are made to facilitate the speedy and economical administration of the estate, and if creditors neglect to conform to those requirements, they may suffer for their own fault; but if they have failed to appear in time for any good cause, they may still come, before the final dividend, and if they show that their excuse is good and the claim is meritorious, the door will be opened to them.

The judgment is reversed and the cause remanded to the circuit court with directions to enter judgment establishing the plaintiff's claim against the assigned estate, as shown by the three notes mentioned in its petition, and to certify the same to the assignee as required by section 348, Revised Statutes 1899.

All concur, except *Marshall, J.*, absent.