### UNITED STATES v. FIRST NAT. BANK OF ANAMOOSE.

(District Court, D. North Dakota.  September 27, 1911.)

1. COMMERCE (§ 61*)—INTERSTATE COMMERCE—FEDERAL STATUTE REGULATING SHIPMENT OF INTOXICATING LIQUORS—CONSTRUCTION.

Section 239 of the Criminal Code (Act March 4, 1909, c. 321, § 239, 35 Stat. 1136 [U. S. Comp. St. Supp. 1909, p. 1464]), which makes it a criminal offense for "any railroad company, express company or other common carrier or any other person, in connection with transportation" of intoxicating liquors in interstate commerce, to "collect the purchase price or any part thereof before on or after delivery from the consignee," or in any manner act as the agent of the buyer or seller of any such liquor for the purpose of buying or selling or completing the sale thereof, applies to a bank to which a draft for the purchase price of a shipment of liquor is sent by the seller in another state, with a bill of lading for such liquor attached, and which collects the draft from the consignee, and delivers the bill of lading to him upon which he obtains the liquor from the carrier.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 61.*]

2. STATUTES (§ 199*)—CONSTRUCTION—"PERSON."

The word "person" in federal legislation includes corporations.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 277; Dec. Dig. § 199.*

For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

Criminal prosecution by the United States against the First National Bank of Anamoose.  On motion in arrest of judgment.  Motion overruled.

Edward Engerud, U. S. Dist. Atty.

George A. Bangs and A. W. Cupler, for defendant.

AMIDON, District Judge.  [1] The defendant, the First National Bank of Anamoose, is charged in the indictment with a violation of section 239 of the Criminal Code of the United States, which reads as follows:

"Any railroad company, express company, or other common carrier, or any other person who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other state, territory or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof; or from any foreign country into any state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall collect the purchase price or any part thereof, on or after delivery, from the consignee, or from any other person, or shall in any manner

act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than five thousand dollars."

The indictment charges the offense to have been committed in the following manner: One Dan Meyers, residing at Anamoose, sent an order to the Hamm Brewing Company, doing business at St. Paul, Minn., for a case of beer. The brewing company in filling the order delivered the beer to the Minneapolis, St. Paul & Sault Ste. Marie Railroad Company, and received from it a bill of lading, with an agreement on the part of the company that it would not deliver the beer to Meyers until he presented the bill of lading to its agent at Anamoose. Thereupon the brewing company attached a sight draft for the purchase price of the beer to the bill of lading, and sent the same to the First National Bank of Anamoose, which undertook and agreed with the brewing company to collect the draft from Meyers and deliver to him the bill of lading, so that he could present the same to the railway and receive the beer, and thereby complete the sale and delivery of the same, and that the bank carried out this agreement with full knowledge of all the facts above stated.

The defendant appeared by its president while the court was engaged in a jury term, and entered a demurrer to the indictment on the ground that it did not state facts sufficient to constitute a public offense. The demurrer was overruled, with the understanding that the same question would be renewed by motion in arrest of judgment at a time when the court had more leisure for its consideration. The defendant accordingly entered a plea of guilty, and the case is now before the court upon a motion in arrest of judgment, and has been fully argued by counsel.

An understanding of section 239 requires a brief history of the conflict between liquor dealers claiming the protection of the commerce clause of the federal Constitution, and states prohibiting the sale of intoxicating liquors. That conflict arose as soon as the prohibition measures of Kansas and Iowa had been sustained in Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. The sale of intoxicating liquors in the usual method at retail then became illegal in those states. The liquor dealers at once attempted to carry on the traffic under the protection of the commerce clause of the federal Constitution. They shipped their goods into those states, and sold them in their original packages by means of resident agents, giving rise to what became known as "Original Package Saloons." In Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, the Supreme Court sustained their right to do this. That decision led immediately to the passage of the Wilson act (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), which by its terms subjected liquors, when shipped in interstate commerce, to the police power of the state "upon their arrival" within the state. This statute was assailed as an unconstitutional delegation to the states of power reposed exclusively in Congress. To meet that objection the court changed the point of emphasis in its ruling. In the Leisy Case, following Brown

v. Maryland, 12 Wheat. 419, 6 L. Ed. 678, the court held that the right to sell articles shipped in interstate commerce in their original packages was an "essential incident" of such commerce, and therefore within the exclusive jurisdiction of Congress. In Re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, and Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088, it was declared that interstate commerce in its "fundamental aspect" consists in the transportation and delivery of goods, and that, although the right to sell goods shipped in interstate commerce is an "essential incident" of that commerce, it is "but an incident," and could be subjected to the police power of the state without violating the commerce clause of the federal Constitution. This distinction between interstate commerce in its "fundamental aspect" and the "incidents" of that commerce has since been an important feature of the decisions of the Supreme Court in liquor cases (Heyman v. Southern Ry. Co., 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178), and had an important bearing upon the statute involved in the present case.

The Wilson law, as thus sustained, put an end to the sale of liquor in original packages by means of resident agents. Liquor dealers then sought to accomplish the same result by means of C. O. D. shipments. This was carried on in two forms: First, the usual form which made the carrier an agent of the shipper for the collection of the purchase price of the liquor at or before its delivery; second, by means of bills of lading with drafts attached for the purchase price of the liquor. In the latter case a dual agency was employed. The carrier transported and delivered the liquor, while a bank or some other agency collected the purchase price and delivered the bill of lading by means of which the purchaser obtained the liquor from the carrier. The states assailed these practices by numerous criminal prosecutions, claiming that they amounted to a sale of liquor within the state, so as to subject the transaction to the local police power under the Wilson act. The defendants based their defense upon the claim that under the Wilson act liquors were not subjected to the police power of the state until after their delivery to the consignee, and that a C. O. D. shipment, including the collection of the purchase price, was under the protection of the commerce clause. Their contention was again sustained by the Supreme Court in the case of American Express Co. v. Iowa, 196 U. S. 139, 25 Sup. Ct. 182, 49 L. Ed. 417. In the meantime the territory in the United States in which the sale of intoxicating liquors was prohibited by state law had greatly increased. The decision of the Supreme Court in the case last cited resulted immediately in the introduction of a multitude of bills in both houses of Congress having for their object the prevention of this new form of the old evil. Some of these bills attempted to subject intoxicating liquors to local authority before their delivery to the consignee. But there had been several intimations in the decisions of the Supreme Court that such a law would be an unconstitutional delegation of federal power to regulate commerce among the states. To avoid the danger from that source, other bills attempted to relieve the states by dealing with all agency employed in the state, either in the collection of the

purchase price of the liquor, the making of the sale, or the completing of the sale, and to restrict the right of intoxicating liquor shipped in interstate commerce to its "actual transportation and delivery." For several years these bills were before various committees, both of the Senate and the House of Representatives. They resulted in much learned discussion as to the constitutional power of Congress to deal with the subject. Finally, all such bills pending in the Senate were referred to a subcommittee of the judiciary committee of that body, of which Senator Knox of Pennsylvania was made chairman. After a full hearing, a majority of this committee reported a bill favorably, which embodied the provisions now contained in sections 238, 239, and 240 of the Criminal Code. This measure was drafted by Senator Knox, and was known in the debates in Congress as the "Knox Bill." It was not passed as a separate bill, but while the Criminal Code was pending it was inserted in that act as an amendment, constituting the only important original legislation contained in the Code (43 Cong. Rec. pt. 3, p. 2583). Senators Knox and Fulton submitted scholarly opinions in support of the bill at the time it was reported to the Senate. See 2 Senate Rep. 60th Cong. 1st Sess. Rep. 499, pp. 3, 17. Their arguments are based on the distinction between interstate commerce in its "fundamental aspect," consisting in the transportation and delivery of goods, and the "incidents" of that commerce, consisting in the sale of the goods, collection of the purchase price, and any other acts of agency, "save only the actual transportation and delivery." Inasmuch as no state had prohibited the use of intoxicating liquors, a majority of the committee were of the opinion that Congress ought not to deny them admission to the channels of interstate commerce, as had been done in the case of lottery tickets. They proposed, therefore, to leave "the actual transportation and delivery" of such liquors free, but to cut off all other agency between the seller and the buyer.

We have thus clearly presented the mischief with which Congress attempted to deal in this legislation, and the field within which it considered itself confined in correcting that mischief. Did it accomplish its purpose?

The answer to that question will depend to some extent upon the manner in which the statute is construed. Counsel urges with great force that the statute is penal, and should therefore be strictly construed. That rule has long been subject to qualification in federal courts. Chief Justice Marshall early in the case of United States v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37, said of it:

"The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words in their ordinary acceptation, or in that sense in which the Legislature has obviously used them, would comprehend."

Following that decision, the court again, in United States v. Hartwell, 6 Wall. 385, 396, 18 L. Ed. 830, stated the true rule in language whose accuracy cannot be improved:

"When the words are general, and include various classes of persons, there is no authority which would justify a court in restricting them to one class, and excluding others, where the purpose of the statute is alike applicable to all. The proper course in all cases is to adopt that sense of the words

which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the Legislature. The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular instead of the more narrow technical one; but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent."

See, also, United States v. Corbett, 215 U. S. 233, 242, 30 Sup. Ct. 81, 54 L. Ed. 173. The last part of section 239 reads precisely upon the acts of the defendant, as charged in the indictment. That it collected the purchase price of liquors shipped in interstate commerce, and that it acted as agent of the seller of such liquors for the purpose of completing the sale thereof, is too plain for controversy.

Were the defendant's acts done "in connection with the transportation" of the liquors? It is first urged with apparent hesitation that the phrase beginning with the quoted words qualifies the word "person," and requires him to be in some way connected with the carrier as agent or employé. Such a construction would do violence to ordinary English speech. If that had been the meaning intended, the section would either have read "any other person who is connected," or "any other person connected." Section 239 was derived from a bill which was before the committee, and had been introduced in the Fifty-Ninth Congress by Representative Brantley of Georgia. It provided as follows:

"That any railroad company, express company or other common carrier, or other person who shall, in connection with the transportation of spirituous, vinous, malt, and intoxicating liquors of all kinds from one state or territory into another state or territory, collect on, before or after delivery, from the consignee or other person, the purchase price, or any part thereof, saving only in the actual transportation and delivery of the same, shall be subject in so doing to all the police powers of the state or territory into which such liquors are transported and delivered, and for this purpose, in all cases of the sale of spirituous, vinous, malt, and intoxicating liquors of all kinds in interstate commerce, where the sale is sold 'Collect on Delivery,' the place of delivery shall be deemed and held the place of sale."

The phrase "in connection with the transportation," etc., clearly limits the latter part of the section, and qualifies "shall collect." It would have been placed in section 239, the same as it was in Congressman Brantley's draft, had not Senator Knox employed the long and involved phraseology which he did for the purpose of covering the entire field of federal jurisdiction. To have inserted the phrase as he framed it between the word "shall" and "collect" would have separated the parts of the verb so widely as to have obscured the meaning.

The primary purpose of the whole phrase beginning "in connection with" was to confine the statute within the scope of federal jurisdiction. It occurs in each of the three sections, and has been carefully framed to comprehend the whole field of federal authority. It embraces, not only interstate and foreign commerce, the District of Columbia, and organized territories, but under the words "place noncontiguous to, but subject to the jurisdiction thereof," also extends to Alaska, an unorganized territory, and to our island possessions. The draftsman is at great pains to employ this somewhat involved form

of expression, so as, on the one hand, to confine the statute within the limits of federal authority, and, on the other hand, to extend it over the whole field of that authority. Congress had recently, in the employer's liability act, experienced the result of a failure on its part, when dealing with interstate commerce, to confine its legislation in express terms to the field of its jurisdiction. Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. At the very session at which the statute here under consideration was passed, Congress had been compelled to re-enact the employer's liability act to supply such an omission.

Undoubtedly the secondary object of the phrase was to require that the forbidden acts should be done in connection with interstate commerce. It is plain that, if a liquor dealer should sell intoxicating liquor shipped in interstate commerce on credit, that Congress could not make the act of collecting the purchase price either by a bank or an attorney months after the transaction was closed criminal under its power to regulate interstate commerce, because such an act would not be a part of that commerce. Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737. I entirely agree with counsel for the defendant that it is an element of every act forbidden by the statute that it should be done "in connection with the transportation" of the liquor. But it seems to me the acts of the defendant fully meet that requirement. The statute forbids any person to act "in any manner as the agent of the buyer or seller of any such liquor for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same." Giving effect to the previous part of the section, this agency must be done "in connection with the transportation." When the whole language is read together, however, it clearly indicates that there may be an agency in connection with the transportation of the liquor for the purpose of buying or selling or completing the sale thereof, which shall not consist in its actual transportation or delivery. By a familiar rule of construction, the exception proves the existence of that from which it is excepted. Brown v. Maryland, 12 Wheat. 438, 6 L. Ed. 678; Gibbons v. Ogden, 9 Wheat. 190, 6 L. Ed. 23; Bend v. Hoyt, 13 Pet. 270, 10 L. Ed. 154; Arnold v. United States, 147 U. S. 499, 13 Sup. Ct. 406, 37 L. Ed. 253. By expressly excepting from the forbidden agency the actual transportation and delivery of the liquor, the statute clearly indicates that there was an agency "in connection with the transportation" "for the purpose of buying or selling or completing the sale," which did not consist in the actual transportation or delivery. That being the case, it may be seriously asked what act, for the purpose of completing the sale, could possibly have a more intimate connection with the transportation, and yet not be a part of the actual transportation, than the acts charged against this defendant. As the agent of the seller, it held the bill of lading, and thereby prevented the consummation of the transportation by the delivery of the goods, until, as agent of the seller, it received the purchase price, and then as such agent delivered the bill of lading to the purchaser so that he could present the same to the carrier, and thereby complete the sale by obtaining a delivery of the liquor. In Norfolk & Western Ry. Co. v.

Sims, 191 U. S. 441, 24 Sup. Ct. 151, 48 L. Ed. 254, the identical acts which are charged against the defendant here are held to be so intimately connected with the transportation and delivery of goods as to be a part of interstate commerce, and for that reason exempt from state authority. We must assume that the able lawyer and experienced business man who framed this legislation was familiar with that form of C. O. D. shipment which is accomplished by means of a bill of lading with a draft attached. The opinion in American Express Co. v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417, which gave rise to the statute, and had been constantly before the committee for months, gave great prominence to this form of the transaction. See 196 U. S. 144, 25 Sup. Ct. 182, 49 L. Ed. 417. The authority mainly relied on by the court is Norfolk & Western Ry. Co. v. Sims, 191 U. S. 441, 24 Sup. Ct. 151, 48 L. Ed. 254. There the transaction took the form of a bill of lading and draft, which, as in this case, were sent to an independent agent for collection. But in both decisions the transaction is referred to as a C. O. D. shipment, the same as if the collection had been made by the carrier.

We must give some meaning to the phrase "for the purpose of buying or selling or completing the sale," and not make this language synonymous with collecting the purchase price which had already been expressly forbidden. "Collecting the purchase price" was the act of the carrier at which section 239 is aimed. Other wrongs of carriers had been provided for by section 238. The language, "for the purpose of buying or selling or completing the sale," must be without meaning, unless it was intended to cover C. O. D. shipments by means of draft and bill of lading.

It was immaterial whether the carrier collected the purchase price or a bank did so. In either case the transaction amounted to a sale of the liquor within the state in violation of local law. Regardless of when the title passed as a matter of law, what actually occurred was this: The liquor dealer by means of acts done wholly within the state first collected the purchase price from the buyer, and then turned over to him the liquors. There would be no reason in forbidding carriers to act as collecting agents, if other familiar agencies were to be left free to perform the same service, and accomplish the very evil which all concede the statute was intended to remedy. All agree that either form of the transaction is within the mischief of the statute. The language of the statute on its face is clearly broad enough to cover both forms. That being the case, the court ought not to exempt the defendant from its penalties by the mere force of a narrow construction. It is conceded that, if the acts done by the defendant had been done by a carrier, they would have been sufficiently "connected with the transportation" to make the act a violation of the statute. In view of the charge of the indictment that the contract between the seller of the liquor and the bank was for the express purpose of collecting the purchase price and delivering the bill of lading, so that the purchaser could present the same to the carrier, and complete the sale, and that this arrangement was entered into with full knowledge as to the transaction between the seller and the buyer, it

is impossible for me to say that the acts of the bank are not as intimately connected with the transportation of the liquors as they would have been if they had been done by the carrier. In either case the acts are done after the transportation is completed. They intervene between the actual transportation and the delivery. They have the same relation to the transportation, and serve the same purpose, whether done by a banker or a carrier. In my judgment, therefore, the acts of the bank were done "in connection with the transportation" in such a way as to constitute a violation of the statute, if it is possible for any person other than a carrier to commit the forbidden act.

Counsel for defendant invokes the rule of ejusdem generis, and says that the words "any other person" are confined by the earlier specifications of the section to those who are engaged in the carriage of the liquors either as principal or employé. The rule invoked is not much in favor at the present time. Stroud's Judicial Dictionary, after a full review of the English authorities on the subject, says: "It may be doubted whether the rule is of much practical value at the present day." Sutherland on Statutory Construction cites many cases, beginning at section 278, which hold that the rule amounts to hardly more than a suggestion. At section 279 he defines its limits accurately in the following language:

"In cases coming within the reach of the principle just illustrated, general words are read, not according to their natural and usual sense, but are restricted to persons and things of the same kind or genus as those just enumerated. They are construed according to the more explicit context. This rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the lawmaker. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the Legislature is to be found in the ordinary meaning of the words of the statute. The sense in which general words, or any words, are intended to be used, furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning will be given, according as the intention is thus indicated. To deny any word or phrase its known and natural meaning in any instance, the court ought to be quite sure that they are following the legislative intention. Hence, though a general term follows specific words, it will not be restricted by them when the object of the act and the intention is that the general words shall be understood in their ordinary sense."

In United States v. Mescall, 215 U. S. 26, 30 Sup. Ct. 19, 54 L. Ed. 77, the Supreme Court quotes with approval from National Bank of Commerce v. Ripley, 161 Mo. 132, 61 S. W. 587, the following language with reference to the rule:

"But this is only a rule of construction to aid us in arriving at the real legislative intent. It is not a cast-iron rule. It does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute as that purpose may be gathered from the whole instrument."

The court also cites with approval Gillock v. People, 171 Ill. 307, 49 N. E. 712, and Winters v. Duluth, 82 Minn. 127, 84 N. W. 788,

where courts refused to apply the rule to statutes whose inferences in support of it were much stronger than those of the statute here under consideration. See, also, State v. Schuchmann, 133 Mo. 111, 33 S. W. 35, especially opinion of Grantt, P. J.; United States Cement Co. v. Cooper, 172 Ind. 599, 88 N. E. 69, 72. All decisions upon the rule go back to Woodworth v. State, 26 Ohio St. 196, and Foster v. Blount, 18 Ala. 687. Both involved penal statutes, and, if the rule had been applied with academic rigor, the conviction of the defendants would have been set aside. But the courts restricted the rule within limits which have since been universally approved in American decisions. The rule itself is an "artificial, conventional rule," from which the Supreme Court has said "the judicial mind should free itself in the construction of criminal as well as other statutes." United States v. Union Supply Co., 215 U. S. 55, 30 Sup. Ct. 15, 54 L. Ed. 87, a case which forcibly illustrates the present standard of the highest court in construing penal laws.

It is first urged that the words "any other persons" must be confined to those engaged in the carriage of liquor; otherwise the preceding words, "any railroad company, express company or other common carrier," would have no significance at all, because, if the statute extends to all persons, there would be no reason in specifying particular classes. The argument disregards a well-known practice in the drafting of statutes. Particular words are used more often than otherwise for the purpose of emphasis, and to remove all possible doubt. Judge Valliant in the case of National Bank of Commerce v. Ripley, 161 Mo. 133, 61 S. W. 588, states the argument, and answers it as follows:

"But why should the particular words have been used in this instance if the Legislature intended to allow all creditors who could show good cause to come in after the assignee had closed the door? Doubtless because the Legislature did not want to leave it a debatable question that sickness and absence from the state were good excuses."

Here the evil with which Congress was dealing had manifested itself chiefly in the acts of railroad companies and express companies. The statute, therefore, specifies them in order that they might surely be brought within its provisions. If the rule were rigidly enforced, there would have been no sense in using the terms "railroad company" and "express company" because they are comprehended in the general term "common carrier." The truth is that the use of all these specific terms was not for the purpose of restricting the scope of the statute, but to leave the application of the statute to railroad companies and express companies and other common carriers to no mere inference to be drawn from the general term "any person."

Counsel again says the phrase "any other person" was used to cover the agents, servants, and employés of the previously mentioned carriers. The words are not well chosen for that purpose. If that had been the object of Congress, there was a precise formula to express the thought which was familiar in federal legislation, and which had been used in the previous section of the same act, namely, "any officer, agent or employé thereof." Not only this, but the bills that were pending before the committee, for example, the bill introduced by Senator

Bacon, expressly confined itself in the manner indicated, using the words, "any railroad company, express company or common carrier, their officers, agents or employés." In section 239, the formula was rejected, and it must have been rejected for the purpose of giving to the statute a larger application.

In my judgment the words, "any railroad company, express company or other common carrier," exhaust the whole genus of carriers, and in such a case Lord Tenterden's rule is never used for the purpose of restricting a general term. United States v. Mescall, 215 U. S. 26, 30 Sup. Ct. 19, 54 L. Ed. 77; United States Cement Co. v. Cooper, 172 Ind. 599, 88 N. E. 69. Counsel, to meet this objection, says the words "any other person" were used to cover private carriers. That suggestion seems to me purely fanciful. Private carriers have long since ceased to be factors in interstate commerce. Such a private carrier would probably have been subject to the police power of the state under the Wilson law. Delameter v. South Dakota, 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724. I cannot myself believe that the subject of private carriers of intoxicating liquors in interstate commerce was at all before the mind of Congress in this legislation. No such evil is disclosed in the reports of the committee or the hearings before the committee. I think the general words should be given their broad meaning so as to make the statute comprehend the mischief with which Congress was attempting to deal.

Reference is made to the following language from the report of the subcommittee of the Senate:

"By the proposed substitute, if it be enacted into law, Congress will, under its constitutional authority, bring its powers to bear directly upon the common carriers prohibiting them from acting as agents of the vendors of liquor in other states."

The whole report is embodied in a few lines. It does not attempt to discuss the statute or to define its limits. To restrict the language of the statute by such a general reference in a report would be much worse than to use the debates in Congress for that purpose, and the Supreme Court has held such debates inadmissible. United States v. Freight Ass'n, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007. The reference simply seizes upon the most prominent feature of the act, and calls attention to that without any intent to restrict the statute within the terms of the reference.

The statute was not primarily aimed at carriers, but at all acts done wholly within the state for the purpose of completing the sale of intoxicating liquors shipped in interstate commerce. At the time the law was framed, the form of such agency which employed a bill of lading with a draft attached was brought clearly before Congress in the decision of the Supreme Court which gave rise to the legislation. It would have been idle for Congress to deny such agency to carriers, and leave it open to other equally well-known forms. The contest had been a long one to prevent the interstate commerce clause of the federal Constitution from being used as a means for carrying on traffic in intoxicating liquors through local agencies in violation of state laws. In my judgment Congress intended by the present statute to cut off

all agency in the sale of intoxicating liquors to be shipped in interstate or foreign commerce, "saving only the actual transportation and delivery" of such liquors. Its language is broad enough to attain that object. The court ought not to narrow it so as to make possible the very mischief which the statute was intended to prevent by a mere change of form, especially when that form of transaction was well known, and was brought clearly to the attention of Congress in the decision which gave rise to the statute.

[2] The word "person" in federal legislation covers corporations. Rev. St. U. S. § 1 (U. S. Comp. St. 1901, p. 3); United States v. Union Supply Co., 215 U. S. 50, 54, 30 Sup. Ct. 15, 54 L. Ed. 87. It cannot be urged, therefore, that the bank is not included in the words "any other person" because it is a corporation.

The motion in arrest of judgment must be denied.