MOTTY EITINGON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES EITINGON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NAUM EITINGON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 58854, 60163, 60610. Promulgated April 28, 1933.

*I. Graff, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $2,853.12 and a penalty of $713.28 in the income tax of Charles Eitingon for the calendar year 1928. At Docket No. 60163 the following is assigned as an error in the determination of the Commissioner:

That the petitioner [Charles Eitingon] was liable for tax to the American Government upon an amount of interest of $44,359.98 received by him on an indebtedness on an open account from Motty Eitingon, an American citizen, the

transaction out of which the said indebtedness for interest to the petitioner arose having been wholly consummated outside of the United States, the amount of interest in question having been paid to the petitioner outside of the United States and having no connection with American sources as defined by the law.

The Commissioner determined a deficiency of $975.32 and a penalty of $243.83 in the income tax of Naum Eitingon for the year 1928. At Docket No. 60610 the error assigned was the same as that above quoted from Docket No. 60163, except that the interest received was in the amount of $2,884.36 and was received by Naum Eitingon.

The Commissioner determined a deficiency of $2,362.22 representing tax which Motty Eitingon should have withheld for 1928 from income paid to Charles Eitingon and Naum Eitingon, nonresident aliens, which income and tax he should have reported on a withholding return.

The cases have been consolidated. When they came on for hearing there was no appearance for the petitioners, but counsel for the respondent filed a stipulation of facts which is as follows:

1. Petitioners Naum Eitingon and Charles Eitingon are and were during the calendar year 1928 non-resident alien individuals, being residents of the City of Lodz, Poland, and petitioner Motty Eitingon is and was during the calendar year 1928 an American citizen, a resident of the City, County and State of New York.

2. Petitioner Motty Eitingon paid an amount of interest in the sum of Two thousand eight hundred eighty four and 36/100 ($2,884.36) Dollars on an indebtedness on an open account to Naum Eitingon, of Lodz, Poland, during the calendar year 1928, said indebtedness being unsecured by any collateral within the United States.

3. Petitioner Motty Eitingon paid an amount of interest in the sum of Forty four thousand three hundred fifty nine and 98/100 ($44,359.98) Dollars on an indebtedness on an open account to Charles Eitingon of Lodz, Poland, during the calendar year 1928, said indebtedness being unsecured by any collateral within the United States.

4. On or about November 6, 1930, Motty Eitingon executed and filed individual income tax returns for the calendar year 1928 on behalf of Charles Eitingon and Naum Eitingon. True photostat copies of said returns are attached hereto, marked Exhibits A and B, respectively, and made a part hereof. No other returns for said year were filed by Charles or Naum Eitingon, or by Motty Eitingon on behalf of Charles or Naum Eitingon.

5. Petitioner Motty Eitingon did not withhold tax on the interest so paid to petitioners Naum Eitingon and Charles Eitingon, non-resident aliens, and did not report such income and tax on a withholding return, not having regarded such interest as income from sources within the United States as defined in Section 119 (a) (1) of the Revenue Act of 1928.

6. The interest received by non-resident alien petitioners, Naum Eitingon and Charles Eitingon, from Motty Eitingon, an American citizen, was not included in returns for the said non-resident alien petitioners filed on their behalf for the calendar year 1928, treating such interest as income from sources without the United States as defined by Section 119 (c) (1) of the Revenue Act of 1928.

7. Respondent has treated the amounts of interest paid to Naum Eitingon and Charles Eitingon as income from sources within the United States and taxable by the American Government and seeks to hold petitioner Motty Eitingon liable for withholding tax thereon as on income from sources within the United States.

8. If said interest constitutes income to petitioners Naum Eitingon and Charles Eitingon from sources within the United States, then petitioner Motty Eitingon is liable as withholding agent for the amount of the deficiency determined against him as shown in the notice of deficiency.

The income tax return filed on behalf of Charles Eitingon reported net income of $5,577.50, consisting entirely of dividends on stock of domestic corporations, an exemption of $1,500 was claimed, and no tax was shown to be due. The Commissioner added to income, as shown on the return, $44,359.98, representing interest received from Motty Eitingon, and computed the deficiency and a delinquency penalty of 25 per cent for failing to file a return within the time prescribed by law.

The income tax return filed on behalf of Naum Eitingon reported net income of $29,422.50, consisting entirely of dividends on stock of domestic corporations, an exemption of $1,500 was claimed and the only tax shown to be due was surtax in the amount of $833.80. The Commissioner added to income, as shown on the return, $2,884.36, representing interest received from Motty Eitingon, and computed the deficiency and a delinquency penalty of 25 per cent for failing to file a return within the time prescribed by law.

The three petitioners are stockholders in Eitingon-Schild Company, Inc., an American corporation which has branches in many parts of the world. The open accounts above referred to originated in the course of business dealings between Motty Eitingon and the other two petitioners.

No question has been raised in the petitions in regard to the penalties, and the proof which has been offered does not indicate that the Commissioner erred in this respect. Cf. *Cantrell & Cochrane, Ltd.*, 19 B. T. A. 16. The only question for our decision is whether or not the interest paid by Motty Eitingon to the two other petitioners was income from sources within the United States. If it was not, then there is no deficiency in any of the three cases, the penalty would have no tax to support it in the case of Charles Eitingon, and the penalty in the case of Naum Eitingon would be limited to 25 per cent of the surtax on $29,422.50. There is no showing that the transaction out of which the obligation for interest arose was consummated outside of the United States or that the interest in question was paid outside of the United States. Thus, the quoted assignment of error is not an accurate statement of the issue.

The pertinent provisions of section 119 of the Revenue Act of 1928, under which the question must be decided, are as follows:

(a) *Gross income from sources in the United States.*—The following items of gross income shall be treated as income from sources within the United States:

(1) INTEREST.—Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including—

(A) interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States and not having an office or place of business therein, or

(B) interest received from a resident alien individual, a resident foreign corporation, or a domestic corporation, when it is shown to the satisfaction of the Commissioner that less than 20 per centum of the gross income of such resident payor or domestic corporation has been derived from sources within the United States, as determined under the provisions of this section, for the three-year period ending with the close of the taxable year of such payor preceding the payment of such interest, or for such part of such period as may be applicable, or

(C) income derived by a foreign central bank of issue from bankers' acceptances.

Subsection (c) (1) provides that interest other than that derived from sources within the United States, as provided in subsection (a) (1), shall be treated as income from sources without the United States.

Counsel for the petitioners argues that the rule of *ejusdem generis* should be applied in interpreting the phrase " other interest-bearing obligations " in section 119 (a) (1). He would interpret this phrase to mean obligations similar to bonds and notes, that is, formal written agreements or acknowledgments of a liability to pay a certain sum. Even so, it might include the obligations here in question. We rejected a similar contention in *Stockholms Enskilda Bank*, 25 B. T. A. 1328. See also *British-American Tobacco Co., Ltd.*, 27 B. T. A. 226. Although counsel for the petitioners has not attempted to refute the reasoning of the Board employed in the former case, nevertheless, what we there said on the subject was undoubtedly mere dicta and need not control us here. The rule of *ejusdem generis* has been evolved as an aid in the search for intent through a consideration of the words used by a writer. It should be used to resolve a doubt, not to create one. There are other valuable rules of interpretation. These frequently conflict one with the other and also with the rule of *ejusdem generis*. The problems of statutory interpretation are seldom solved by rote. Sound judgment should be exercised to the end that the true intent of the legislators may be determined as accurately as is humanly possible.

In *United States* v. *First National Bank*, 190 Fed. 336, at page 343, the court said that the rule of *ejusdem generis* is not much in favor

at the present time. The following was then appropriately quoted from Sutherland on Statutory Construction, sec. 279, as an accurate definition of the limits of the rule:

In cases coming within the reach of the principle just illustrated, general words are read, not according to their natural and usual sense, but are restricted to persons and things of the same kind or genus as those just enumerated. They are construed according to the more explicit context. This rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the lawmaker. It affords a mere suggestion to the judicial mind that, where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the Legislature is to be found in the ordinary meaning of the words of the statute. The sense in which general words, or any words, are intended to be used, furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning will be given, according as the intention is thus indicated. To deny any word or phrase its known and natural meaning in any instance, the court ought to be quite sure that they are following the legislative intention. Hence, though a general term follows specific words, it will not be restricted by them when the object of the act and the intention is that the general words shall be understood in their ordinary sense.

The following quotation from *United States* v. *Hartwell*, 6 Wall. 385, 396, is apposite:

When the words are general, and include various classes of persons, there is no authority which would justify a court in restricting them to one class, and excluding others, where the purpose of the statute is alike applicable to all. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the Legislature.

The language used in section 119 (a) (1) is broad if the words used are read according to their natural and usual sense. Thus read they would undoubtedly include the interest here in question. This interest was upon interest-bearing obligations of a resident. It was interest on deposits with a resident individual. It was earned and paid in the United States. The record does not disclose whether or not there was any writing or formal agreement evidencing the donor's obligation to pay interest and return the principal. The Commissioner's regulations and rulings indicate that he has always treated interest such as this as income from sources within the United States. See Regulations 45, article 91; Regulations 62, article 317; I. T. 1311, C. B. I–1, p. 224. Although we have studied the act and the legislative history of the section and its predecessors in earlier acts, no reason occurs to us why Congress might have desired to

1346

relieve such income from tax. On the contrary, we would suppose that Congress had intended to tax it as income from sources within the United States in order to accomplish the object of the act. Cf. *Burnet* v. *Brooks*, 288 U. S. 378. There is nothing to indicate that the lawmakers were thinking only of interest of a particular class which would not include the interest in question. The words used should not be narrowly construed, as the petitioners urge, since there is no apparent reason for such a construction. The Commissioner did not err in holding that this interest is income from sources within the United States and subject to tax.

*Decision will be entered for the respondent.*