(C. D. 1456)

INTER-MARITIME FORWARDING COMPANY, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 28, 1952)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph E. Weil* and *Mollie Strum*, special attorneys), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "Rubber Advertising Mats" and was assessed with duty at the rate of 25 per centum ad valorem under the provision in paragraph 1537 (b) of the Tariff Act of 1930 for—

Manufactures of india rubber  *  *  *  not specially provided for.

The protest claim is for duty at the rate of 20 per centum ad valorem under the provisions of paragraph 1021 of the same act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for—

All other floor coverings not specially provided for [except felt-base floor coverings].

A sample of the merchandise is before us as plaintiff's exhibit 1. It consists of what is obviously a rubber floor mat, 36 inches long by 20 inches wide, colored green, containing an inlay of printed advertising material in white. It was conceded by counsel for the plaintiff at the trial of the issue that the merchandise in question is a manufacture of india rubber.

At the trial, plaintiff offered the testimony of Roy H. Leonard, owner and manager of a company which was the sales representative in the United States for the manufacturer and exporter of the mats in question. His testimony, in essence, is that mats such as exhibit 1 are designed to be used and are used to utilize the floor area of business houses or stores for advertising purposes, and that in such use they are used as floor coverings and are walked upon. He stated that the mats in issue have certain features which make them particularly useful for this purpose, such as sturdy and nonskid construction, which protects both the floor area where used and the person who might walk thereon.

Pointing out that the provision for "floor coverings" is a designation by use, while the provision for "manufactures of india rubber" is one by composition, plaintiff relies upon the well-settled rule in the construction of tariff statutes that where an imported commodity is embraced by a designation by use and also by a designation by composition, the provision by use takes precedence over the one by composition, citing *M. A. Katz & Co.* v. *United States*, 4 Cust. Ct. 327, C. D. 354, in which is cited *United States* v. *A. W. Faber, Inc.*, 16 Ct. Cust. Appls. 467, T. D. 43211.

Defendant also relies upon a rule of statutory construction, i. e., the doctrine of *ejusdem generis*, pointing out that paragraph 1021 refers to certain straw matting, and floor coverings made therefrom, and to carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, jute, or a mixture thereof, and contending that "india rubber is not *ejusdem generis* to straw, flax, hemp, or jute or a mixture thereof."

In support of its contention that the application of the *ejusdem generis* rule would exclude from the provision for "floor coverings" merchandise such as that in issue, defendant cites the cases of *Magone* v. *American Trading Co.*, 57 Fed. Rep. 394; *O. G. Hempstead* v. *United States*, 6 Treas. Dec. 251, T. D. 24301; *Gimbel Bros., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 146, T. D. 47111; and *United States* v. *J. L. Hudson Co.*, 23 C. C. P. A. (Customs) 313, T. D. 48177.

As the *ejusdem generis* rule, if applicable as contended by the defendant, would operate to exclude the articles in question from one of the two competing paragraphs, thus destroying the basis for the

application of the classification by use rule contended for by the plaintiff, which presupposes the article to be embraced by both competing provisions, we must first examine the situation in the light of the defendant's contention.

The *ejusdem generis* rule is thus stated in Crawford's "The Construction of Statutes" (1940):

§ 191.   **Ejusdem Generis.**—Where general words follow the designation of particular things, or classes of persons or subjects, the general words will usually be construed to include only those persons or things of the same class or general nature as those specifically enumerated.

As we understand defendant's contention, it is that only floor coverings which are of the same class or general nature as carpets, carpeting, mats, matting, and rugs, made wholly or in chief value of flax, hemp, or jute, or a mixture thereof, are embraced by the provision for "all other floor coverings not specially provided for." Although it is not spelled out in its brief, Government's contention would seem to require that the floor coverings embraced by the latter provision would have to be composed wholly or in chief value of a substance of the same general nature, as regards material or texture, as flax, hemp, or jute, or a mixture thereof, or that the use of the floor covering be of the same general nature as that of carpets, carpeting, mats, matting, and rugs made of the named substances.

The function of the *ejusdem generis* rule is as an aid in ascertaining the intention of the legislature.   *Texas* v. *United States*, 292 U. S. 522. It therefore has no controlling effect if the intention of the legislature can be otherwise ascertained, and it cannot be employed to restrict the operation of an act within narrower limits than was intended by the legislature.   Crawford, *op. cit.* § 191.[1]

We are satisfied that it was not the legislative intent to limit the application of the term "all other floor coverings not specially provided for," either as it was originally enacted by the Congress, or as modified in the General Agreement on Tariffs and Trade, *supra*, to such floor coverings as were of the same class or general nature as carpets, carpeting, mats, matting, and rugs, made wholly or in chief value of flax, hemp, or jute, or a mixture thereof.

Certainly, the words *"all other,"* with which the provision for the general class of floor coverings commences, connote a broadening, rather than a restriction, of the class of things to be embraced thereby.

In the Summary of Tariff Information, 1929, prepared by the

---

[1] "Its use is permissible only as an aid to the court in its attempt to ascertain the intent of the lawmakers. Nor will it be proper for the court to follow the rule where to do so will defeat or impair the plain purpose of the legislature.   It cannot be employed to restrict the operation of an act within narrower limits than was intended by the lawmakers."

See also *United States Cement Co.* v. *Cooper*, 172 Ind. 599, 88 N. E. 69; *Willis* v. *St. Paul Sanitation Co.*, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 622.

Also Sutherland, Statutes and Statutory Construction, 3d ed., by Horack, Vol. 2., § 4914; *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84; and *Gooch* v. *United States*, 297 U. S. 124.

United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, at the time the revision of the Tariff Act of 1922 which ultimately became the Tariff Act of 1930 was in contemplation by the Congress, on page 1666, under the caption "Floor Coverings, N. S. P. F.," the following was reported:

The bulk of imports under the classification "floor coverings, n. s. p. f.," are probably rice-straw rugs from Japan. Other types of floor covering of which there is a substantial domestic production *and imports of which would probably be dutiable under this classification, are felt-base floor covering and rubber tile.* There have been no imports of either of these products, so far as is known, up to the end of 1928. [Italics added.]

On page 1667, under the caption "Felt-Base Floor Covering," the uses and description thereof are given as follows:

Felt-base floor covering with a base of asphalt-saturated rag felt is similar to floor oilcloth with a base of burlap.

Felt-base floor covering is made by coating both sides of asphalt-saturated felt with paint and subsequently printing designs or patterns on the front or wearing surface. Practically no floor oilcloth has been made in the United States during the past few years; felt-base floor covering has supplanted floor oilcloth.

On page 1668, under the caption "Rubber Tile," the uses and description thereof are given as follows:

Rubber tile is a type of floor covering similar in appearance to certain types of inlaid linoleum. Rubber tile is made by calendering to the desired gauge a mixture of rubber, certain compounding ingredients, pigments, and a vulcanizing agent, and then subjecting the sheet tiling to a curing process consisting of high pressure and heat. The sheet tiling is then die-cut into blocks.

It must be remembered that paragraph 1022 of the Tariff Act of 1922, which was the subject of the foregoing report, was identical with the subsequently enacted paragraph 1021 of the Tariff Act of 1930, except that it included carpets, etc., made of cotton. It cannot be said that felt-base floor covering and rubber tile, to which the attention of Congress had been drawn by the Summary of Tariff Information, 1929, hereinabove quoted, as classifiable under the provision for "all other floor coverings not specially provided for," are of the same class or general nature as carpets, carpeting, mats, matting, and rugs, made wholly or in chief value of flax, hemp, or jute, or a mixture thereof, and we are convinced that the legislature did not intend that the rule of *ejusdem generis* should apply to that provision.

We are not unmindful of the fact that in the case of *United States* v. *J. L. Hudson Co.*, 23 C. C. P. A. (Customs) 313, T. D. 48177, cited by the defendant, our appellate court, referring to the identical statutory language here involved, was of the opinion—

\* \* \* that the general provisions for all other floor coverings, not specially provided for, contained in that paragraph were intended by the Congress to be

restricted to articles *ejusdem generis* to those thereinbefore enumerated and described  *  *  *,

and held accordingly.

In reaching this conclusion the court—and we think rightfully so—rejected the contention of counsel for the appellee that the statute was unambiguous and that examination of the legislative history of the provision was unwarranted. In its examination of the legislative history of the paragraph as indicated by the Summary of Tariff Information, 1929, however, the court noted only the statement on page 1662 that—

Paragraph 1022 [Tariff Act of 1922] relates to floor coverings made of vegetable fibers or vegetable substances. Imports under this paragraph consist principally of floor coverings composed of rice-straw, matting rushes, cotton, and jute.

and apparently did not take into consideration the material on pages 1666, 1667, and 1668, hereinabove quoted.

We note also that in the General Agreement on Tariffs and Trade, T. D. 51802, the general provision for floor coverings reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1021 | All other floor coverings not specially provided for:<br>Felt-base_____<br>Other_____ | 12½% ad val.<br>20% ad val. |

thus indicating, we think, by the inclusion of the provision for felt-base floor covering, that the negotiators thereof understood such floor covering, which is not *ejusdem generis* to those thereinbefore enumerated, was encompassed by the provision.

In view of the foregoing, the other cases cited by the defendant are not applicable, and we hold the merchandise to be within the purview of paragraph 1021, as amended, *supra*. As it is also conceded to be a manufacture of india rubber within the purview of paragraph 1537 (b), the question of which provision takes precedence over the other is resolved by the application of the classification by use rule contended for by the plaintiff.

Judgment will therefore issue sustaining the protest claim for duty at the rate of 20 per centum ad valorem under the hereinbefore-quoted provision in paragraph 1021 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and directing the collector of customs to reliquidate the entry accordingly.