(C.D. 2839)

AMERICAN CUSTOMS BROKERAGE COMPANY, FOR ACCOUNT OF LAHAINA AIKIDO CLUB *v.* UNITED STATES
KOTAKE COMPANY, LIMITED

United States Customs Court, Second Division

(Decided December 5, 1966)

*Lawrence & Tuttle* and *Glad & Tuttle* (*Edward N. Glad* and *Robert Glenn White* of counsel) for the plaintiffs.

*Barefoot Sanders*, Assistant Attorney General (*Andrew P. Vance* and *Harvey A. Isaacs*, trial attorneys), for the defendant.

Before RAO and FORD, Judges, and DONLON, Senior Judge

DONLON, Judge: The issue before us here is whether merchandise, described as "Judo Tatami" or "Judo Mats with Plastic Top," classified by reason of chief value under modified paragraph 1312, are more particularly described as floor coverings under paragraph 1021, as the consolidated protests claim.

The competing provisions are as follows:

Classified under the provisions of paragraph 1312, Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108:

Manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding 1 inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for (except gill nets or netting) _____ 25¢ per lb. and 30% ad val.

Claimed under the provisions of paragraph 1021, Tariff Act of 1930, as modified by T.D. 54108:

Floor coverings not specially provided for (except grass or rice straw floor coverings, and not including felt-base floor coverings) _____ 17% ad val.

The record before us includes a stipulation that the merchandise at bar in these two protests, although variously named, is similar in all material respects; that the material of chief value thereof is rayon; that these are mats the principal use of which is in rooms for the practice of judo and for judo instruction, solely; that the mats are usually left on the floor in such rooms; and that where the mats are used on floors in "general purpose rooms, or gymnasia not used exclusively for judo instruction or practice, the mats are picked up and stacked one on top of the other." (R. 5.)

Mr. Edward M. Kotake, who identified himself as president of Kotake Company, Limited, one of the plaintiffs, testified. There is in evidence one exhibit, identified by Mr. Kotake as a picture of a typical Tatami. (Exhibit 1.) "Tatami," so Mr. Kotake testified, is a Japanese word which (to him) means "floor covering." (R. 7.) Later, in response to questions of the presiding judge, Mr. Kotake said that Tatami "is a name used for all floor coverings in Japanese *of that particular type.*" (R. 8; emphasis added.) He admitted that there are Judo Tatamies and other Tatamies.

Defendant introduced no evidence, resting on the record developed by plaintiffs.

Plaintiffs argue that paragraph 1021 is a provision for all types of floor coverings and that it is not limited to floor coverings which are made of enumerated materials (citing *H. W. Robinson Air Freight Corp.* v. *United States,* 48 CCPA 148, C.A.D. 782); that the paragraph is an enumeration by use and, hence, takes precedence in tariff classification over a competing descriptive enumeration. Paragraph 1312 is a descriptive enumeration.

We agree that paragraph 1021 is a use provision and that the enumeration by use includes floor coverings which are in chief value of rayon and those which have a plastic coating. The issue narrows down to this: have plaintiffs, by their proofs, shown that the *chief* use of these Tatamies is as a floor covering in the tariff sense?

In our opinion two cases, *Gimbel Bros., Inc.* v. *United States,* 22 CCPA 146, T.D. 47111 (1934), and *United States* v. *Inter-Maritime Forwarding Co.,* 41 CCPA 107, C.A.D. 537 (1953), are significant.

In the *Gimbel Bros.* case, articles that were invoiced as sponge rubber mats were classified in liquidation under the enumeration for all other floor coverings, not specially provided for, paragraph 1022 of the Tariff Act of 1922. The trial court (*Gimbel Bros. et al* v. *United*

*States*, 65 Treas. Dec. 1224, Abstract 26666) sustained the liquidation classification and overruled the protest claim that sponge rubber mats at bar were dutiable under paragraph 1439 as manufactures in chief value of india rubber. The record included a stipulation that the sponge rubber mats were designed and chiefly used for the convenience and comfort of bathers, to prevent slipping and chilling of the feet when stepping out of the bath; that when so used the bath mat was placed directly on the tile or other bathroom floor, where the bather stood on it; that the mat caught and retained water dripping from the body; that, sometimes, the mat was placed directly in the bathtub to prevent the bather from slipping; that when not in use the mat was draped over the bathtub or put away; and that these sponge rubber bath mats were not fit or suitable to be walked upon with shoes. Our appeals court reversed, holding that sponge rubber bath mats were *not* floor coverings under paragraph 1022. In support of its decision, the appeals court stated the following:

Paragraph 1022 of the Tariff Act of 1922 appears in schedule 10 thereof, which is entitled "Flax, Hemp, and Jute, and Manufactures of", and practically all of the articles provided for in the many paragraphs of the schedule are articles having flax, hemp, or jute as a basis. Exceptions are present in the last four paragraphs of the schedule. Among these last four is paragraph 1022, the full text of which reads:

> PAR. 1022. Common China, Japan, and India straw matting, and floor coverings made therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, made wholly of cotton, flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for, 40 per centum ad valorem.

It seems obvious that the use of the article here involved differs from the customary use of such articles as the paragraph specifically names, such as floor coverings, made from straw matting, and carpets, carpetings, etc., made wholly of cotton, flax, hemp, or jute, or a mixture thereof. The sample (Exhibit 1) before us is 21½ inches long by 13½ inches wide and about one-fourth inch in thickness. It appears to be wholly of rubber treated in a manner which gives its upper surface a spongy appearance. The stipulation states that the use for which it is designed is on the floors of bathrooms. It is a bathing accessory and, so far as shown, has no other use.

The stipulation recites that the articles first appeared in trade and commerce in the United States in 1925. It is not, therefore, an article which Congress is presumed to have had specifically in contemplation at the time of the passage of the Tariff Act of 1922.

In view of the fact that the article differs so greatly in material, texture, and use from the articles admittedly involved in paragraph 1022, and, in view of the statements of the stipulation, we feel constrained to differ with the trial court as to its proper classification.

Tariff acts are, of course, made for the future, but when an article entirely new enters commerce after the passage of an act, we do not feel that it must necessarily be classified in a paragraph simply because, in a literal sense, it may be described therein. Other considerations are proper. This article does not compete in any way with other articles provided for in schedule 10, or, to be more specific, in paragraph 1022. [Pp. 147, 148.]

In *United States* v. *Inter-Maritime Forwarding Co., supra,* the merchandise at bar was a green-colored india rubber floor mat, with inlaid rubber letters advertising S & H green stamps. The merchandise was classified as manufactures of india rubber, not specially provided for, under paragraph 1537(b) of the 1930 act. The protest claim was under paragraph 1021 as floor coverings, not specially provided for. This court, as in *Gimbel, supra,* found (*Inter-Maritime Forwarding Company, Inc.* v. *United States,* 29 Cust. Ct. 122, C.D. 1456), that the mats at bar were chiefly used to cover the floor and sustained the protest claim as floor coverings. Our appeals court, in an opinion written by Judge Worley, now Chief Judge, reversed, stating:

Thus it is clearly evident that the principal use of the mats is not as floor coverings, as we construe the meaning of those words as used in paragraph 1021, *supra.* The obvious purpose for which they are designed and the use to which they are put is as an advertising medium rather than as a floor covering. Their use on the floor is wholly incidental to the primary use to which they are put. We are supported in that conclusion by the testimony of the witness that the words "WE GIVE S. & H. GREEN STAMPS" are so inlaid or vulcanized in the mat as to remain even long after some of the physical features of the mat, upon which appellant relies in support of its contention that the mats are floor coverings, have disappeared.

Further, as was stated in the *Gimbel* case, *supra,* this article is not of the same texture as those provided for in paragraph 1021, *supra,* nor can it be said to compete with those items. We are of the opinion that the mats correspond with the provisions of paragraph 1537(b), and in view of our conclusion, we find it necessary to *reverse* the judgment of the Customs Court. [P. 111.]

Plaintiffs argue that these judo mats are floor coverings and that they can be distinguished from the mats in the *Gimbel* and *Inter-Maritime* cases for the reason that, in those cases, the mats were used other than as a floor covering, to wit, inside the bathtub (in *Gimbel*) and for advertising (in *Inter-Maritime*). These suggested distinctions are not persuasive, in the light of the stipulated facts before us, namely, that the mats are principally used in rooms solely for the practice and instruction of judo, presumably to soften the spills and falls that are incident to the practice of judo.

The latest case involving classification of floor coverings seems to be *Diamond Trading Co., Ltd., et al.* v. *United States,* 54 Cust. Ct. 70,

C.D. 2510 (1965), cited by plaintiffs but not discussed. The merchandise there was described on the invoices as "Beach Mats (Floor Covering Grass Mats)." They were charged with duty under paragraph 1537(a) of the Tariff Act of 1930, as modified, as manufactures in chief value of grass. The protest claim was under paragraph 1021, as modified, as Japan straw matting and floor coverings made therefrom. Judge Nichols, in an opinion written for the unanimous First Division, pointed out that paragraph 1021 is a designation by use, and that the claimed classification as manufactures of grass carries with it the necessity of finding that the mats at bar were not chiefly used as floor coverings at the time of importation. Upon examination of the proofs as to chief use, Judge Nichols stated:

The evidence in the instant case falls far short of establishing that the chief use of this merchandise is as floor coverings. The witness mentioned a variety of uses for these mats—on the beach, in the park, at picnics, and on the porches or in rooms of houses. He called the articles beach mats and had sold 70 per centum of them to Waikiki and had seen people carrying them back and forth to the beach. His deduction that because 50 per centum of the visitors to Hawaii came from inland states, the articles could not have been used on beaches is untenable. Beaches may be found at lakes and other bodies of water, as well as the seashore, and people who travel to Hawaii may use the mats there or they may well travel to other places having beaches, or they may sun-bathe in their own backyards. In fact, no evidence has been presented as to the actual use of these mats throughout the United States, as floor coverings or otherwise. An examination of the samples makes it seem implausible that they should ever be used as floor coverings, as they are thin and flimsy and do not appear to be suitable for use on floors. They would be dangerous as they would be apt to slide. They would not wear well. On the other hand, they are easy to carry because they are light in weight and can be rolled and tied with the tape. [P. 76.]

It is well established in tariff jurisprudence that where a descriptive enumeration and an enumeration by use are equally applicable to an imported article, and when both are provisions for articles that are not otherwise provided for, as here, the enumeration according to use, if proven to be the chief use, will prevail over the descriptive enumeration. But where, as to the article at bar, the enumerated use is at best a fugitive use and chief use is for some other special purpose (as in the case of bath mats, and here to cushion falls incurred in the exercise of judo), it is not sufficiently proved that *chief use* is the enumerated use.

On the record before us, we are of opinion that the chief use of the article at bar is as an exercise mat used in the practice known as judo, and not a floor covering in the tariff sense.

The protests are overruled. Judgment will be entered accordingly.